Nov. Term.
1860.

KIRBY
v.
STUDEBAKER.

$\frac{15}{f166}$   $\frac{45}{503}$

---

## KIRBY *v.* STUDEBAKER.

*A.* and *B.* purchased of *C.*, by contract in writing, all the strawberries that might ripen on his patch during the season; and agreed to pay him, therefor, a given price on delivery. ·*D.* became surety for *A.* and *B.*, by subscribing the following agreement: "On the part of the said *A.* and *B.*, I hold myself, with them, responsible for their part of the above contract." *C.*, in pursuance of the contract, delivered the berries; but *A.* and *B.* failed, on their part, to pay for them, and became insolvent. Suit by ·*C.* against *A. B.* and *D.* for the price of the berries delivered.

*Held*, that the undertaking of the surety bound him to a direct performance of the contract, and was, in effect, that he or his principals would pay for the berries on delivery.

*Held*, also, that *C.* might have demanded the price when the berries were delivered, and withheld them unless it was paid; but that he·was not bound to do so, but might deliver them, and compel the payment of the price afterward.

*Held*, also, that it was not necessary to notify the surety of the failure of the principals to pay the price of the berries; but that if any notice was to be given, it was notice from the surety to *C.* to sue the principals.

Nov. Term,   *Held*, also, that mere delay in proceedings to collect the debt, where time is
   1860.     not given by a binding agreement, does not discharge the surety.

KIRBY
   v.     APPEAL from the *St. Joseph* Circuit Court.
STUDEBAKER.   PERKINS, J.—*Henry Studebaker*, of *St. Joseph*, had a straw-
*Tuesday,*   berry patch. *H. P. & C. Dillon*, keepers of a saloon, before
*November* 27. the strawberries were ripe, entered into a written agreement
with *Studebaker*, by which they purchased all the berries that
should ripen in the patch; agreeing to pay therefor, on de-
livery at their place of business, at the rate of $3.75 a bushel,
during the season. *Kirby*, the appellant, added to the agree-
ment this clause:

"On the part of the said *Dillons*, I hold myself, with them,
responsible for their part of the above contract.

"*John F. Kirby.*"

The berries were delivered to the *Dillons*, in parcels as
they ripened, during the month of *June*, 1859. The *Dillons*
did not pay for them on delivery, nor afterward; but nothing
was said by either of the parties about any change in the
contract.

*Kirby* had no notice of the failure of the *Dillons* to pay,
till this suit was commenced, being in *September*, 1859, about
three months after the delivery of the berries. In this inter-
val of time the *Dillons* had become insolvent.

On these facts, *Kirby* claims that he is discharged from
liability, on three grounds:

1. Alteration of the contract by *Studebaker* and the *Dil-
lons*, without his consent.

2. Want of notice of the default of the *Dillons*.

3. Want of diligence in *Studebaker* in proceeding against
the *Dillons*.

We must first ascertain the nature of *Kirby's* undertaking.
In the 2d Vol. of the 3d Ed. of American Leading Cases, on
page 283, it is said that "the contract of the surety may be
in the nature of a guaranty, and merely stipulate for perform-
ance by the principal; or it may bind the surety to a direct
performance on his part."

*Kirby's* undertaking, in this case, we think to be of the
latter character. We think it clearly bound him to a direct

performance with the *Dillons*. He says, I hold, or bind, "myself with them" for the performance, &c. He agreed, then, that the berries should be paid for on delivery; that he or the *Dillons*, would make such payment. And this was a continuing contract, applicable to each separate delivery of berries during the season.

Now, as between *Studebaker* and the *Dillons*, what was the right of the former under the contract? On arriving at *Dillons* for the delivery of the first bushel, what might *Studebaker* do? He might tender the berries and demand concurrent payment of the price, and if it was not furnished, he might refuse to deliver the berries; but he was not bound thus to act. This withholding of the article sold till the payment of the price, is simply a privilege which the law gives for the security of the seller; but the contract itself does not require that he should exercise it. If he is satisfied of the responsibility of the buyer, he may deliver the article sold, according to the contract on his part, and then compel performance on the part of the buyer, afterward. Withholding delivery by the seller is a non-fulfillment of the contract on his part, but one that the law allows for his security, under certain circumstances. The delivery of the berries, then, by *Studebaker* to the *Dillons*, was a fulfillment, on his part, of the contract, not a breach or variation of it; and immediately upon such delivery, the *Dillons* became his debtors to the amount of the price of the berries delivered, by the failure to fulfill on their part. *Studebaker* was not bound to rescind the contract because the *Dillons* failed in its performance, unless he chose to do so, nor to take any other course than that indicated by its terms.

But, as we have already seen, whatever consequences resulted to the *Dillons* by their failure to pay, the like resulted to *Kirby*. He too, became *Studebaker's* debtor for the price of the berries delivered.

We now consider the questions of notice and lapse of time.

As *Kirby* stands as a surety in the original contract, it is beyond doubt, that if any notice was to be given, it was a notice on his part to *Studebaker*, to sue the *Dillons*. See *Rowe* v. *Buchtel*, 13 Ind. 381. And it it is well settled that

Nov. Term,
1860.

KIRBY
v.
STUDEBAKER.

Nov. Term,
1860.

KIRBY
v.
STUDEBAKER.

mere delay, where time is not given by a binding agreement, in proceeding to collect a debt, does not discharge a surety. *Spence*, in the 1st vol. of his Equity Jurisdiction, p. 638, says: "In a case, *temp. Car. I.*, a surety was relieved from his obligation on a bond which had been continued for a long time *without his privity*, he thinking the same to be paid; and there are other cases of a similar nature in that and the preceding reign. Toth, 279; *ibid.* 280, *temp. Jac. I.*, where a bond was not put in suit for twelve years. See C. P. Cooper, Append. 565. But it is now settled, that it is the business of the surety, (he being a guarantor for the payment,) to see that the principal debtor pays, not that of the creditor. Lord *Eldon, Wright* v. *Simpson*, 6. Ves. 734.—*et.* v. *Anon*, A. D., 1820. C. P. Cooper, Append. 621. It is the same at law. *Trent Navigation* v. *Harley*, 10 East. 34, 40." See, also, *Goring* v. *Edwards*, 3 Ross' Leading Cases, top p. 77; S. C., Eng. C. L. Rep. vol. 19. *Goselee*, Justice, says: "I think a surety has a duty upon him to go and inquire into the transaction. In *Orme* v. *Young*, 1 Holt, 85, there was delay in giving notice, and yet the surety was holden not to be discharged."

In the case at bar there was judgment below for the plaintiff, and it must be affirmed.

*Per Curiam.*—The judgment is affirmed, with 2 per cent. damages and costs.

*R. L. Farnsworth*, (1) for appellant.

*J. H. Miller* and *M. G. George*, for appellee.

(1) The following authorities were cited by *Mr. Farnsworth*, in support of the proposition, that sureties are bound only according to the strict letter, or precise terms, of their contract, and are released if it be modified in any respect by the principals. *Ludlow* v. *Simonds*, 2 Caines, 60.—2 Term. R. 372.—7 do. 256.—2 Brown's Ch. Ca. 579.—2 Ves. Jr. 540.—6 Hill, 543.—8 Wendell, 516.—10 Johns. Rep. 180.—Parson's Mer. L. 67 —*Bonar* v. *MacDonald*, 1 Eng. L. & E. R. 1.—*Miller* v. *Stewart*, 9 Wheat 680.—*Mayhew* v. *Boyd*, 5 Maryl. R. 102.