Ward *v.* Wilson *et al.*

No. 10,685.

### WARD *v.* WILSON ET AL.

GUARANTY.—*Notice.—Lease.—Pleading.—Demurrer.*—A guaranty, written upon a lease and delivered with it, which recites that in consideration of the making of the lease and agreement that security should be given for the performance of the agreements contained therein on the part of the lessee, " I hereby undertake and agree to and with " the lessors, that the lessee " will do and perform all his agreements in said lease by him to be done and performed," signed by the lessee and the guarantor, is one of strict guaranty, and, as such, makes it the duty of the guarantee to give notice to the guarantor of the default of his principal; but the giving of such notice is not a condition precedent to the guarantee's right to maintain an action against the guarantor, and the complaint, to withstand a demurrer, need not aver notice, nor does the failure to give notice discharge the guarantor from liability except to the extent of damages he may suffer thereby, and this must be set up in defence.

SAME.—*Matter of Defence.*—If the failure of the lessors to be present at the end of the lessee's term to accept the surrender of possession is available to the guarantor at all, it can only be made so by answering that fact, coupling it with such other facts as would show injury to him; so, also, if the guarantor is injured by the subsequent conduct of the lessors in prosecuting suits against the lessee, or by accepting payment of damages, such facts are matters of defence.

From the Tippecanoe Superior Court.

*R. P. Davidson, J. C. Davidson* and *T. B. Ward,* for appellant.

*H. W. Chase, F. S. Chase* and *F. W. Chase,* for appellees.

MITCHELL, J.—All that need be stated in order to present the question for decision in this record is, that on the 22d day of August, 1876, the appellees leased certain premises in the city of Lafayette to one Telford, at an annual rental of $600, payable in monthly instalments, for the term of one year, unless they should sell the premises, in which event the tenancy was to expire upon sixty days' notice.

The lease contained a stipulation that the lessee should " surrender the possession of said premises at the expiration

of the tenancy in as good condition as they now are, natural wear and decay and unavoidable accidents excepted."

It was further stipulated that the performance of the agreements contained in the lease should be guaranteed to the lessors, and there was the usual stipulation that a failure to pay rent promptly should terminate the lease at the option of the lessors.

Before the lease was delivered there was written upon and delivered with it the following guaranty :

" In consideration of the making of the foregoing lease by Alexander Wilson, Joseph S. Hanna and Henry H. Hanna to James H. Telford, and agreement that security should be given for the performance of the agreements in said lease contained on the part of James H. Telford, I hereby undertake and agree to and with said Alexander Wilson, Joseph S. Hanna and Henry H. Hanna, that said James H. Telford will do and perform all his agreements in said lease by him to be done and performed. Dated Lafayette, August 23d; 1876.

" JAMES H. TELFORD.
" WM. L. WARD."

Telford went into possession under the lease, but failed at the end of the year to surrender. The appellees brought suit against him in the Tippecanoe Circuit Court for possession and damages, which resulted in a judgment in their favor for possession, and $177.10 damages for the detention of the property. Telford then paid the judgment and costs, asked for and obtained a new trial, and the case was again tried on the 27th day of May, 1878, the result being another judgment for possession and $164.44 damages against him. From this judgment he appealed to the Supreme Court, giving bond to stay proceedings meanwhile, where the judgment of the court below was affirmed February 15th, 1881. 71 Ind. 555.

Telford died in July, 1880, before the appeal was determined, his family remaining in possession until May 20th, 1881, when the appellees obtained possession.

These facts are set up in a complaint, filed against the ap-

pellant on his contract of guaranty above set out, which also charges that "by the failure and refusal of said James H. Telford to surrender the possession of said premises at the end of said term, to wit, August 23d, 1877, * * the plaintiffs were deprived of possession, use and rents thereof, from said 23d day of August, 1877, to the 20th day of May, 1881," which were worth $2,400, and for which judgment was demanded.

A demurrer to the complaint was overruled, and exception duly taken.

The only question discussed by counsel for appellant relates to the ruling of the court upon the demurrer to the complaint, and no further statement of the case is pertinent, except to say that upon issues made trial was had, which resulted in a judgment for the appellees.

It is earnestly contended on behalf of the appellant, that his contract is one of strict guaranty, collateral to that of his principal, and that no action can be maintained thereon without first giving notice of the default of Telford, and that because notice is not averred in the complaint the demurrer should have been sustained. On the other hand, it is contended with equal emphasis by counsel for the appellees, that the contract was a direct and absolute engagement, binding the guarantor to the same extent as his principal, and that in any event he was liable without such notice.

The distinction between contracts of guaranty and suretyship has been repeatedly and accurately defined, and the nature of the obligation of each is stated with precision and certainty in the books, but, as to the circumstances under which a guarantor is entitled to notice of the default of his principal, there is irreconcilable conflict. The confusion mainly grows out of the form in which the contract is expressed, and the subject to which it is applied.

In some instances, a distinction is suggested and made between the case of a contract of guaranty, as applied to a commercial transaction, which is in the form of a letter of credit,

or applied to the guaranty of a promissory note, and the case
of a contract expressed in substantially the same language, as
applied to an ordinary business affair.

The rule in regard to demand of payment and notice of de-
fault, as applied to commercial paper, is everywhere regarded
as in no sense applicable to guarantors ordinarily.   In the case
of commercial paper, demand and notice, in order to fix the
liability of an endorser or guarantor, are required by an ar-
bitrary rule of the law merchant; while the rule requiring
demand and notice to guarantors, of the character under con-
sideration, rests upon the fact that it is the duty of the guar-
antee to notify the guarantor of the default of the principal,
with a view of saving him from actual loss which may arise
from want of convenient and certain means of knowledge.
Outside of commercial paper, no good reason is perceived
why the same set of words in a contract of guaranty should
mean one thing when applied to one subject-matter, and the
same words, expressing the obligation in substance the same,
should mean another and different thing when applied to an-
other subject-matter.   Wade Notice, section 386.   For in-
stance, where the undertaking is entered into originally with
the principal, and stipulates that a debt shall be paid, or some
other act shall be done, it is not perceived why the subject-
matter of the contract should, in any such case, be considered
in determining the conditions upon which the guarantor, if
properly speaking he can be called a guarantor, should be
held liable.   In all such cases he is liable at once, and with-
out notice, upon default of his principal.   In like manner,
where the stipulation is to pay the debt or perform the con-
tract of another, absolutely and at all events, whether entered
into separately from the other or not, the same effect should,
in all cases, be given to such contracts, and the obligor held
liable, without notice of default.   Such were the cases of *Frash*
v. *Polk*, 67 Ind. 55; *Kirby* v. *Studebaker*, 15 Ind. 45; *Kline*
v. *Raymond*, 70 Ind. 271; *Studabaker* v. *Cody*, 54 Ind. 586;
*Cole* v. *Merchants Bank*, 60 Ind. 350; *Sample* v. *Martin*, 46

Ind. 226; *Burnham* v. *Gallentine*, 11 Ind. 295; *Watson* v. *Beabout*, 18 Ind. 281.

In cases falling within either of the foregoing classes, neither failure to notify, lapse of time, insolvency of the principal, nor anything less than would exonerate a surety, will discharge a guarantor, either wholly or *pro tanto*, for the reason that in all such cases his contract is rather in the nature of a contract of suretyship, or a direct original personal undertaking, than that of a guarantor. When, however, the undertaking is not that the promisor will pay the debt or perform the engagement of another, but that the other will pay or perform, then different considerations are involved; and while it may be laid down as a rule that it is a duty incumbent on the guarantee in all such cases, to give notice to the guarantor of the default of the principal, yet, since that rule is founded upon the consideration of affording to the guarantor the means of saving himself from actual loss, by securing indemnity or otherwise, and not upon an arbitrary rule of law, it can not be said that it would be reasonable to hold that the same result must inevitably follow in such case as in the case of commercial paper, regardless of the fact that the guarantor may or may not have sustained injury by the failure to give such notice.

We are constrained to concur in the statement of an approved author, that "the current of modern American and English authority is against the observance of the distinction predicated simply upon the fact that the sum of the principal's liability actually incurred is uncertain." Wade Notice, section 423.

No adequate reason occurs to us for stating it as a rule, that a direct, unconditional agreement to pay for goods which may be delivered to a third person in the future, or the same kind of a contract to do any other thing which another has engaged to perform, may, by construction, be made conditional upon a notice of the default of such third person.

A direct, original contract, expressed in the same words,

should create the same liability under all circumstances, and should be enforced in the same manner and upon the same conditions, saving only the rights of sureties, whether it be the contract of principal, surety or guarantor, and if notice of future liability is to be relied on, it should be stipulated for in the writing, rather than that the courts should undertake to annex some condition of liability upon an absolute engagement, and where the engagement is not by its terms absolute, but collateral, by which we mean an engagement that some third person will pay a debt or fulfil a contract, since the obligation of the guarantor is not to pay the debt or do the thing contracted for himself, but to answer in damages for the default of his principal, we can see no reason why the character of the thing to be done should dispense with the duty to give notice.

We scarcely need say that no question of notice of the acceptance of a guaranty, or proposal to guaranty, is involved in this case.

Applying these principles to the case under consideration, our first conclusion is, that the contract of the appellant, expressed in the form set out in the complaint, was an agreement that his principal Telford would perform the covenants contained in the lease, and was not the direct engagement of the appellant to do anything personally except to answer for his principal's default, and it was, therefore, collateral to that of the principal, and one of strict guaranty ; and, within the rule laid down, it was the duty of the guarantee to have given notice of the default.

It does not follow, however, that because of a failure to give notice, the guarantor was thereby discharged from liability. A failure to give notice, and damage resulting therefrom, must both concur in order that the guarantor may be discharged. This is believed to be the result of the doctrine of the best considered cases in this court, as it certainly is of the adjudications of other courts.

In the case of *Davis* v. *Wells*, 104 U. S. 159, cited approv-

ingly in *Wills* v. *Ross,* 77 Ind. 1, this rule was recognized and followed. *Vinal* v. *Richardson,* 13 Allen, 521; *Bashford* v. *Shaw,* 4 Ohio St. 263; *Second Nat'l Bank* v. *Gaylord,* 34 Iowa, 246; Brandt Suretyship and Guar., section 173.

The fact that notice is required of the guarantee does not make the giving of notice a condition precedent to his right to maintain an action against the guarantor, for the reason that his liability may or may not exist without notice. The notice is not, as in the case of commercial paper, necessary to give the right of action, although the failure to give it may defeat it.

It results from the foregoing considerations that the complaint was not bad for failing to aver notice of the default.

Other grounds of objection are urged by counsel against the complaint, which have received careful attention, but our conclusion is that while they are not without force they could only be made available by answer.

Assuming, without conceding or denying, the necessity of the presence of the appellees to accept the surrender of possession at the end of Telford's term, as urged by appellant, it was only available by answering that fact and coupling it with such other facts as would show injury to him, or that Telford's lease was thereby extended by implication of law, and so, if by the subsequent conduct of the appellees in prosecuting suits against Telford, or by accepting payment of damages, the relations of the parties were changed in any way, to the appellant's detriment, all these were matters, like the failure to give notice, as we conceive, to be set up in defence.

The judgment is affirmed, with costs.

Filed Jan. 21, 1885.