LaRose *et al. v.* The Logansport National Bank *et al.*

Judgment reversed.

Filed June 17, 1885.

No. 11,471.

LaRose et al. *v.* The Logansport National Bank
ET AL.

Principal and Surety.—*Contract of Surety.*—The engagement of a surety is a direct original agreement with the obligee that in the event his principal fails, he will perform the original obligation; and whether it is entered into jointly with the principal or separately, the extent and character of the obligation are the same as to both, depending only upon the form in which it is expressed.

Same.—*Contract of Guarantor.*—The contract of obligors, whether entered into separately or jointly with the principal, if by its terms it appears that the principal is separately bound by an original, independent contract, to which the contract for security is collateral, and the obligors agree therein that the principal will pay or perform according to his original engagement, and that they will answer for his default in the event of failure, is a contract of guaranty.

Same.—*Bond of Bank Cashier is Contract of Guaranty.*—The contract of the sureties in the bond of a bank cashier, conditioned for the faithful discharge of his duties by such cashier, is a contract of guaranty. Elliott, J., and Zollars, J., dissent from this proposition.

Same.—*Notice of Default.—Matter of Defence.*—A failure to give notice to guarantors of the default of their principal, except in cases governed by commercial rules, is a matter of defence, and resulting damages must concur with such failure in order to work a discharge.

Same.—*Complaint.—Failure to Aver Notice of Default.*—A complaint upon a contract of continuing guaranty is not subject to demurrer because of its failure to aver notice of the default.

LaRose *et al. v.* The Logansport National Bank *et al.*

SAME.—*Liability of Cashier.—Access to Funds by Others.*—Where by a by-law of a bank its cashier is made responsible for the funds and valuables of the bank, it can not be implied that his bond would not become operative until all the other officers and employees were denied access to such funds and valuables, nor that he is responsible for losses which may occur through the delinquencies of others.

SAME.—*Consideration.—Approval of Bond after Appointment.*—The bond of a bank cashier, executed and approved two weeks after he enters upon his duties, is upon sufficient consideration, and is operative, at least from the date of its approval.

SAME. —*Knowledge by Employer of Misconduct of Employee.—Release of Guarantor.*—The knowledge by an employer of the misconduct of an employee, whose conduct and fidelity have been guaranteed by another, which will, if concealed, release the guarantor, must relate to the service in which the employee is engaged, and must be something more than mere moral delinquency, unconnected with the subject-matter of the guaranty.

SAME.—*Revocation of Guaranty.*—A continuing contract, guaranteeing the fidelity of a bank cashier, may be revoked by the guarantors without cause, upon proper notice, but the right must be exercised reasonably.

PRINCIPAL AND AGENT.—*Declarations of Agent.*—Only declarations of an agent while actually engaged in transacting the business of the principal, to which the declarations relate, are admissible.

PRACTICE.—*Bills of Exceptions.*—Bills of exceptions must be signed by the judge and filed within the time limited.

From the White Circuit Court.

*S. T. McConnell, R. Magee, D. B. McConnell* and *D. Turpie,* for appellants.

*M. Winfield, C. E. Taber, D. D. Dykeman, W. T. Wilson, G. C. Taber, A. W. Reynolds* and *E. B. Sellers,* for appellees.

MITCHELL, C. J.—Oscar M. Goodwin was appointed cashier of the Logansport National Bank on the 9th day of January, 1878.

In compliance with a requirement of its by-laws, he executed his bond, with the appellants as sureties, in the penal sum of $25,000, conditioned for the faithful discharge of his duties as cashier.

This suit was brought by the bank against Goodwin and his sureties on the bond.

The complaint is in six paragraphs, to each of which a demurrer was filed and overruled. Each paragraph avers the appointment of Goodwin on the date above mentioned, the execution and approval of the bond on the 23d day of January, 1878, that he entered upon, and continued in, the discharge of his duties as cashier until June 17th, 1882, when he wrongfully destroyed the bond and absconded, largely in default to the bank.

With each paragraph of the complaint is set out what purports to be a substantial copy of the bond, which is, in substance, as follows:

Know all men that we, etc., are held and firmly bound unto the Logansport National Bank, etc., in the penal sum of twenty-five thousand dollars, for the payment of which we bind ourselves, etc.

But, whereas the above named Oscar M. Goodwin was on the 9th day of January, A. D. 1878, duly appointed cashier of the above named bank by the board of directors of said bank, to hold said office during the pleasure of said board, etc.: Now, therefore, if the above named cashier shall faithfully discharge the duties of said office during his continuance therein, and such duties as are now or may hereafter be from time to time prescribed by the by-laws of the board of directors, etc., and shall safely keep account for and pay over all moneys, etc., belonging to said bank, and deliver all notes, bonds, bills, obligations, books, papers and other property of said bank which shall come into or be in his possession by virtue of his office, to the board of directors, then this bond shall be void, otherwise, etc.

A by-law of the corporation is also set out, which provides that the cashier shall be responsible for the moneys, funds and valuables of the bank, and requires that he give bond for the faithful discharge of his duties.

The breaches assigned in varying detail in each paragraph are, that Goodwin embezzled, appropriated and converted to his own use large sums of money belonging to the bank; that

he failed to discharge his duties as cashier, by making false entries on the books of the bank in order to deceive its board of directors; and that he also failed to discharge his duty in other respects, with reasonable skill and diligence, by means of which a large sum of money was lost to the bank, which, upon demand, he failed to account for and pay over.

We concur in the statement found on page 3 of appellants' counsel's printed brief, in which it is said, " These paragraphs of complaint are all substantially the same."

The case was argued orally, with great ability and learning, and elaborate briefs were filed by counsel on both sides.

On the one hand, it was argued that the undertaking of Goodwin's bondsmen constitutes a continuing guaranty, and is collateral to the original contract, and that as there is in the complaint no averment of notice of the default before suit brought, the demurrer thereto should have been sustained.

As against this view, it is contended that as the contract was entered into jointly with the principal obligor, it is an original undertaking, and that the bondsmen became liable as sureties, and as such were not entitled to notice.

With respect to the distinction between a guarantor and surety, much nicety of refinement and some uncertainty will be found to exist, and the basis on which the distinction is made to rest is not always satisfactory. We think it may be said, however, that where the engagement is that one who is liable in the first instance will pay a debt or perform an obligation, and that, upon his default, the promisor will answer for such default, the contract is one of guaranty. A concise definition of the term is: "A promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of some person who, in the first instance, is liable for such payment or performance." Baylies Sureties and Guar. 2; 3 Kent Com. 121; *Gallagher* v. *Nichols*, 60 N. Y. 438; *Dole* v. *Young*, 24 Pick. 250; Colebrooke Col. Secur., p. 329.

The engagement of a surety is, that in the event his prin-

cipal fails, he will perform the original obligation, and whether it is entered into jointly with the principal or separately, the extent and character of the obligation are the same as to both, depending only upon the form in which it is expressed. The contract of a guarantor, on the other hand, is that the principal is able, willing, and that he will perform an engagement which he has undertaken or is about to undertake, and that in the event of failure the guarantor will answer for the consequences. Whether the contract is entered into separately or jointly with the principal, if by its terms it appears that the principal is separately bound by an original independent contract, to which the contract for security is collateral, and the obligors agree therein that the principal will pay or perform according to his original engagement, and that they will answer for his default in the event of failure, they become guarantors. The contract of the one is a direct original agreement with the obligee that the very thing contracted for shall be done. The other enters into a cumulative collateral engagement, by which he agrees that his principal is able to and will perform a contract which he has made, or is about to make, and that if he fails he will, upon being notified thereof, pay the resulting damages. *Ward* v. *Wilson*, 100 Ind. 52 (50 Am. R. 763); *Reigart* v. *White*, 52 Pa. St. 438; *Woods* v. *Sherman,* 71 Pa. St. 100.

In Murfree on Official Bonds, section 1, it is said: "If, however, a bond be executed by a stranger to the original debt, it is regarded as a guarantee." Goodwin's contract with the bank was that he would devote himself, in skill, experience and fidelity, to the conduct of its affairs as cashier. This was his personal obligation to the bank, which no one could discharge in his stead. His bondsmen engaged, that he was possessed of the requisite qualifications to that end, and that he would faithfully exert them in its behalf. In no event was it contemplated that they or either of them would discharge the duties of cashier, or do the particular things which he might fail to do. The fair import of their contract

LaRose *et al. v.* The Logansport National Bank *et al.*

is that they will pay any damages which may accrue on account of his default. This constituted them guarantors, and that Goodwin also joined in this collateral contract did not make it different.

The bond was not the original or principal contract, but was collateral, or in addition to, or by the side of the engagement of Goodwin with the bank, and being so collateral it is brought within the very terms of a guaranty.

Goodwin remained liable on his original engagement with the bank in the same manner and to the same extent that he was before. That he joined in the bond neither enlarged nor varied his original obligation, nor did it in any way bring his sureties into privity with his original contract, nor in any way make that of his bondsmen different from what it would have been if he had not joined.

That the bondsmen, between themselves and their principal, stood in the relation of sureties, may be conceded, but this is aside from the question before us ; that is, what was the nature of their contract with the bank ? If it was an original undertaking, they are sureties; if collateral to the original, guarantors. Their contract with the bank must be determined by its substance and terms, and not by the fact that it was joined in by the principal.

The question before us was determined in *Singer Mnfg. Co.* v. *Littler,* 56 Iowa, 601. In that case Littler, as principal, and the other defendants as sureties, executed a bond conditioned that Littler, as agent of the Singer Manufacturing Company, should pay all indebtedness which had or might accrue in favor of the company against him. A suit was brought on the bond, and it was there, as here, made a question whether the bondsmen were liable as sureties or guarantors. It was held, upon careful consideration of the question, that the bondsmen were guarantors. They were there aptly denominated sureties on a contract of guaranty. So, in the case of *Gage* v. *Lewis,* 68 Ill. 604, in which a bond given

by the continuing members of a firm of partners to a retir-
ing partner, conditioned that the continuing members would
pay all the partnership debts.    In a suit upon the bond, the
rights of the surety were determined upon the basis that his
contract was one of guaranty.    Again, in the case of *Locke*
v. *McVean*, 33 Mich. 473, McVean had been appointed, un-
der a written contract, the agent of Locke, to sell sewing ma-
chines.    He also gave bond, with two sureties, conditioned
that he would " well and truly keep and perform in all re-
spects, according to its true intent and meaning," his con-
tract.    The sureties were regarded, and their liability de-
termined, on the basis of guarantors.    See, also, *Farmers, etc.,*
*Bank* v. *Kercheval*, 2 Mich. 505.

It is contended that the contract under consideration is one
of suretyship, within the holding in *McMillan* v. *Bull's Head*
*Bank*, 32 Ind. 11 (2 Am. R. 323).    The case referred to con-
tains a clear and valuable exposition of the distinction between
a contract of guaranty and one of suretyship, and within the
distinctions there made we think no doubt can remain but that
the contract here is one of guaranty.    It is true it is there said
" a guarantor can not be sued with his principal; for his en-
gagement is not jointly with the latter," but this means that he
can not be sued with him on his original contract, because his
engagement with him on that contract is not joint.    In the
nature of things a contract which is in fact collateral to an
original engagement, and which is in form and essence a con-
tract of guaranty, so far as the guarantors are concerned can
not be turned into an original undertaking or a contract of
suretyship, by reason of the fact that the principal has also
signed it.

It may be well to state that official and statutory bonds are,
or may be, governed by statutory and other rules not appli-
cable to common law obligations, and so with guarantors of
promissory notes in which rules of commercial law are in-
volved.

As respects collateral common law obligations, which are

in their nature contracts of guaranty, we think the conclusion reached is in consonance with sound reason and justice, and well supported by authority.   To hold the obligors on a bond of the character here in question liable as sureties, and bound to take notice of the default of the principal, would expose them to a continuing liability, of which they might remain in actual ignorance for years after it had occurred, and until the defaulting principal had become insolvent, or their opportunity for indemnity was hopelessly lost.   While to give the contract its natural effect, and hold them guarantors, would require the obligee to give notice of the default, or take the chance of loss upon himself.

By construction of law the authorities agree that a guarantor is entitled to notice of the default of his principal, but whether a failure to give such notice effects a discharge of the guarantor is a question upon which the courts are not all agreed.   If the guarantee fails to give notice, and thereby damage ensues to the guarantor, it is held everywhere that to the extent of such loss the guarantor is discharged.

Upon consideration of this question, it was held in the case of *Ward* v. *Wilson, supra,* following what seemed to be the better reason, and the current and weight of the adjudications of this and other courts, that a failure to give notice, except in cases governed by commercial rules, was a matter of defence, and with such failure resulting damages must concur in order to work a discharge of the guarantor.   The case of *Singer Mnfg. Co.* v. *Littler, supra,* relied on by counsel for appellant, shows, in the facts found, that loss was sustained, and is, therefore, not in reality opposed to our conclusion on this point.   Concurring with appellants' counsel in the view, that the contract of the appellants was one of continuing guaranty in which the guarantors were entitled to notice, our conclusion nevertheless is that the complaint was not subject to demurrer because of its failure to aver notice of the default.

It is claimed that the complaint is insufficient, on the fur-

ther ground, that it appears from a by-law of the bank, which is set out in each paragraph, that the cashier was to be held responsible for the moneys, funds and valuables of the bank, and inasmuch as the bond was given to cover his liability, it is argued that in order to hold the complaint good it must appear that Goodwin was put in the exclusive custody and control of its moneys, funds, etc.

As already stated, it is averred in the complaint that Goodwin was appointed and entered upon his duties as cashier. It must be implied from this averment, that to the extent that his duties required him to be placed in possession and control of the funds and valuables of the bank, such possession was given. That other officers and employees may have exercised duties and functions which at the same time gave them access to, and to some extent control over its funds, could in no way impair or affect the possession and control which were necessary to the proper discharge of Goodwin's duties as cashier. It could not have been implied from the fact that the cashier was made responsible for the moneys and funds of the bank that his bond would not become operative until all the other officers and employees were denied access to such funds. It was only meant that as cashier he should be responsible that the funds and valuables should be properly accounted for according to the duties which he owed as cashier. We can not know judicially what officers and employees are required for the proper conduct of the business of a bank, nor can we define in detail their several functions and duties. These may vary according to the location and business of the bank. It is, however, a matter of such common-observation that courts can not be ignorant of the fact that in the administration of the daily affairs of a bank some one besides a cashier must have access to its funds. It by no means follows that the cashier is not so far in possession as to be rightfully held responsible to account for the funds of the bank to the extent, perhaps, of exhibiting each day, or whenever properly called upon at least, the

exact condition of its affairs. Nor does it follow that he is responsible for losses which may occur through the delinquencies of others. *Detroit Savings Bank* v. *Ziegler,* 49 Mich. 157 (43 Am. R. 456); *Rochester City Bank* v. *Elwood,* 21 N. Y. 88; *German Am. Bank* v. *Auth,* 87 Pa. St. 419 (30 Am. R. 374).

It is further contended, that as the complaint avers that Goodwin was appointed cashier on the 9th day of January, 1878, and the bond was not approved until the 23d day of January, 1878, the bond was in consequence executed without consideration.

We do not agree with this view of the case. It is averred in the complaint that a by-law of the bank, which is set out, required the cashier to execute a bond in a stipulated amount, and that in pursuance thereof the bond in suit was executed. Whether the cashier entered upon his duties before or after the bond was approved, does not clearly appear. Nor is it material. It does appear that a bond was required, and that in pursuance of such requirement, the bond in suit was executed and approved, and that Goodwin entered upon and continued his duties as cashier. It is clearly implied, if it is not averred in terms, that he obtained and continued in office as cashier, by reason of the fact that the bond was to be and was executed. This was a sufficient consideration, and the bond was effectual and operative, at least from the date of its approval.

It was held in *Bank of the U. S.* v. *Brent,* 2 Cranch C. C. 696, that the bond of the teller of a bank, executed fourteen days after he entered upon his duties, was valid.

The complaint, as originally filed, consisted of three paragraphs. To this the defendants filed, among others, the following answer:

7. "For a seventh and further paragraph of answer herein, the defendants, except Goodwin, admit, and each of them separately admits, that defendants executed the bond sued on, but each of them, except Goodwin, separately avers that long

before the several embezzlements, frauds and appropriations, mentioned in the plaintiff's complaint, the plaintiff, through her proper officers, was notified by the defendants, and by each of them separately, that the defendant Oscar M. Goodwin was addicted to the vices of whoring, drunkenness and gambling, and demanded that he be relieved from the position of cashier, and the said bond cancelled, which *defendant* (plaintiff) agreed to do."

A several demurrer was filed to the answer, and sustained as to the paragraph above set out, and one of the errors assigned, and insisted upon, is that in this the court erred. ·

Subsequently, additional fourth, fifth and sixth paragraphs of complaint were filed, to which additional paragraphs of answer were filed. The thirteenth paragraph of answer to the additional paragraphs of complaint contained, substantially, the same averments as the seventh, with the addition that in pursuance of the notice to, and demand upon the officers of the bank, it had released the defendants from the bond. A demurrer was overruled to this paragraph, and it is now claimed that all the evidence was admissible under the thirteenth that would have been under both paragraphs if the seventh had remained in. It is insisted that for the reason mentioned, even if the seventh was a good answer, the error in sustaining a demurrer to it was harmless.

It seems to be conceded that the difference between the several paragraphs of complaint is not material; at all events, no attempt has been made to indicate wherein any essential difference exists. We think the question might with propriety be disposed of by adopting the suggestion that no reversible error was committed, even if the ruling was erroneous, but as the question involved is fully presented on both sides by able counsel, we deem it due to them, and to the learned court in which the ruling was made, that the merits of the answer should be examined.

Under the assignment of error which presents the ruling on this answer, the question of the right of one who guar-

antees the good conduct and fidelity of another to revoke such guaranty is discussed. It is claimed on the one hand that the misconduct of the cashier, notice of which was communicated to the officers of the bank, was such that the guarantors were released from the date of such notice. Incidentally it was argued that guarantors, on a contract such as that here in question, have the right at any time upon notice given to revoke such guaranty, without regard to the conduct of the person in whose behalf it is given.

As against this view it is argued that the misconduct which will authorize guarantors, in like circumstances with those in question, to claim exoneration must relate to some act or acts of dishonesty or incapacity in the office or business to which the employment pertains. It is further contended that a bond can not be released by parol.

That the retention in service of one whose conduct and fidelity are guaranteed by another, after knowledge by the employer of his dishonesty, or defalcation, or other misconduct, which renders him unfit for the place, without disclosing the fact to the guarantor, is such a fraud upon the latter as will discharge him from all subsequent liability, is well settled. *Phillips* v. *Foxall,* L. R. 7 Q. B. 666; *Burgess* v. *Eve,* L. R. 13 Eq. 450; *Graves* v. *Lebanon Nat'l Bank,* 10 Bush, 23; Brandt Suretyship and Guar., section 368.

The misconduct, of which the employer has knowledge, and which will release the guarantor if concealed, must, however, relate to the service in which the person whose conduct is guaranteed is engaged, and must be something more than mere moral delinquency, having no relation to, or connection with, the subject-matter of the guaranty. *Atlas Bank* v. *Brownell,* 9 R. I. 168 (11 Am. R. 231); *Andrus* v. *Bealls,* 9 Cowen, 693.

Whether the cashier, whose conduct and efficiency were vouched for, was or was not addicted to the vices imputed to him, at the time the defendants became his guarantors, or whether, if he was, the fact was known to them, is not disclosed

by the answer. If the immoral conduct imputed to Goodwin was a material element as respects their right to demand a release from the bond, then it was also material that he was, at least so far as they knew, free from these vices at the time they entered into the engagement. Manifestly, if he was then addicted to them, and they knew it, the fact that he continued in their practice would furnish no ground for their release. Besides, to say of one that he is addicted to the vices imputed, is to speak relatively. If it be conceded that moral turpitude and social wrong are involved in the indulgence, to any degree, in the imputed vices, and that being addicted to any extent whatever is an imputation upon the character of the person, such indulgences nevertheless can not be made the basis of any legal right or remedy in the connection in which they are here interposed, until they assume an extent or degree which affects the fitness of the person to whom they are attributed for the service required, or until some at least probable relation is shown between their indulgence and the business in which he is employed.

The answer amounts to nothing more than this, the bondsmen notified the officers of the bank that they were dissatisfied with the moral conduct of Goodwin and demanded that he be discharged and the bond cancelled, and the bank agreed to comply with their demand, but before compliance the defalcation occurred. This is pleaded in bar of the whole complaint. Whether the notice was given a day before the defalcation or a month or a year does not appear. Let it be assumed, as we think it may, that the guarantors had the right, upon reasonable notice to the proper officers and directors of the bank, to revoke their guaranty without regard to any misconduct on the part of their principal, and for no other reason than that they chose to do so, yet they must exercise this right reasonably. No misconduct creating a probable emergency appearing, the bank could not be expected to subject its affairs to probable embarrassment by the immediate discharge of its chief executive officer. While

we find no adjudged case which holds that guarantors in a continuing contract like this may, upon notice, revoke the guaranty without cause, at their pleasure, we are nevertheless of opinion that in sound reason such right should and does exist, but the right must be exercised reasonably, and upon due and proper notice to all concerned. The right to revoke a contract guaranteeing the good behavior of another, without an express stipulation in the contract reserving such right, has been denied. Brandt Suretyship and Guar., section 113.

As expressing our view on the subject we quote the following from a learned author: "A promise of guaranty is always revocable at the pleasure of the guarantor by sufficient notice, unless it be made to cover some specific transaction which is not yet exhausted, or unless it be founded upon a continuing consideration, the benefit of which the guarantor can not or does not renounce. * * * And if the guaranty be to indemnify for misconduct of an officer or servant, this promise is revocable, provided the circumstances are such, that when it is revoked, the promisee may dismiss the servant without injury to himself on his failure to provide new and adequate sureties." 2 Parsons Con., "Revocation of Guaranty," pp. 29, 30. See, also, Bishop Con., section 682. The rule above stated, we think, is founded in justice and common right, and is in analogy to the statutory rule relative to official and statutory bonds. In any view, however, in which the answer may be regarded, we think it clearly insufficient for the reasons stated.

During the progress of the trial the defendants proposed to introduce in evidence certain conversations had between Amanda M. Goodwin and Mr. Murdock, the president of the bank. The purport of these conversations was that more than a year before the alleged defalcations and absconding of the cashier, the president of the bank admitted in a conversation had with Miss Goodwin that the cashier was conducting himself badly, was drinking to excess, and neglecting his business, and that he, Murdock, was trying to get him to do

better, and that if the directors of the bank knew of his, the cashier's, habits and conduct in that regard, he feared he would be discharged. A conversation between Mr. Murdock and one Smith of similar purport was offered. The evidence of both witnesses was properly excluded. Conceding that it was competent to prove the fact that the cashier was in the habit of becoming intoxicated, to the neglect of his duties, and that it was competent to prove that the officers of the bank had knowledge of the fact, it was not competent to prove it by introducing in evidence admissions made by an officer or agent of the bank after the fact occurred. Only declarations of an agent while actually engaged in transacting the business of the principal, to which the declarations relate, are admissible. *Hynds* v. *Hays,* 25 Ind. 31; *Pittsburgh, etc., R. R. Co.* v. *Theobald,* 51 Ind. 246.

The defendants also offered in evidence a certain book of the bank, which was excluded. As we can not tell what the book would have shown if it had been admitted, there being no statement of the nature of its contents, and no part of it being shown in the record, we must presume the ruling of the court in that regard was correct.

Questions are also made upon the instructions given by the court. No exceptions were saved to these instructions in the manner provided in section 535, R. S. 1881.

The judgment was rendered in the court below on the 6th day of October, 1883, when the court gave the defendants ninety days within which to complete and file bills of exceptions. The time thus given would expire January 4th, 1884. From the bill of exceptions, purporting to contain the instructions given by the court, it appears to have been presented to the judge, and signed by him, on January 1st, 1884, but the record shows it was not filed with the clerk until January 22d, 1884. This was too late. Section 629, R. S. 1881, does not change the rule which requires bills of exceptions, not only to be signed by the judge, but in addition to be filed

within the time limited. *Louisville, etc., R. W. Co.* v. *Harrigan,* 94 Ind. 245; *Ackerly* v. *Board, etc.,* 89 Ind. 581.

A bill of exceptions, containing nineteen instructions asked by the defendants and refused by the court, is copied into the record. Some question is made by the appellee whether this bill is properly in the record. Whether the instructions are properly in the record or not, we do not determine, as appellants' counsel in their briefs present no question upon them. To say, for example, that instruction "No. 5, found on page 182, commencing on line 21, to line 32, we think states the law as to the first paragraph of the complaint, and as no like instruction, nor any one embodying the same propositions of law, or any of them, was given, it should have been given, and to refuse it was error," without anything further, and to repeat that substantially with reference to all the others, is to induce us to conclude that no error was apparent to counsel. Within the rule, any claim of error, so far as the refusal of the instructions asked is concerned, must be deemed as waived. *Millikan* v. *State, ex rel.,* 70 Ind. 283.

The record and briefs in the case are exceedingly voluminous. We have carefully examined all the questions to which our attention has been called in the argument. Much is said in the printed briefs to the effect that the verdict is not sustained by the evidence, and some of it is there set out and commented upon and criticised at length. It would extend this opinion unnecessarily to state in any detail the reasons which lead us to conclude that the evidence sustains the finding of the jury.

Upon careful consideration of all that seems material, our opinion is that the finding of the jury ought not to be disturbed, and as we find no error of law in the record, the judgment is affirmed, with costs.

NIBLACK, J., agrees *pro forma* to the conclusions reached in this case, without intending to commit himself definitely as to the doctrine of that part of the opinion which holds the

bond sued on to be a contract of guaranty, and not of surety-
ship.

Filed June 25, 1885.

### . DISSENTING OPINION.

ELLIOTT, J.—I fully concur in the conclusion reached in
the prevailing opinion, but upon one point am compelled to
dissent. It is my judgment that the bond upon which the
action is founded is a contract of suretyship and not of guar-
anty. While I have not been able to find any decision ex-
pressly affirming that an ordinary cashier's bond is a contract
of suretyship, yet I find them generally spoken of as consti-
tuting such contracts, and I have not seen an intimation
anywhere that notice of default is in any event required, nor
have I seen it intimated that there is any doubt at all as to
the right to sue all the obligors, the principal as well as the
sureties, in one action, although many cases deny that a prin-
cipal and his guarantor can be jointly sued. Our decisions
upon bonds of a like character have uniformly treated those
who unite with the principal as sureties, though it is true
that, with one exception, the point here discussed does not
seem to have been definitely presented. It was, however,
presented in one case where it was said: "The bond was
joint and several. E. R. Forsyth was not a guarantor but
a surety, and by the terms of his obligation he was liable for
every indebtedness now existing, or which hereafter may in
any manner exist or be incurred on the part of said W. H. For-
syth to said company." *Burns* v. *Singer Mnfg. Co.*, 87 Ind.
541, opin. 544.

The contract sued on, an ordinary cashier's bond, under-
takes, upon one and the same consideration, that all of the
obligors shall be responsible for the conduct of one of their
number. It does not guaranty the payment of an existing
indebtedness, nor does it guaranty payment for goods to be
sold the principal, but it undertakes that one of the obligors
shall faithfully perform the duties of a trust confided to him.
It is an agreement that one of the obligors shall do a desig-

nated thing or things; it is not a guaranty that he will do these things, but a positive, direct, and express undertaking that he will do them. The principal joins in the undertaking, and he, surely, can not be justly deemed a guarantor for himself. All the obligors are liable on the contract, and all may be sued. There is no precedent liability, one and all of the obligors become liable on the default of one of the obligors to do what all have agreed and promised he shall do. There is no distinct and different liability. The default that makes one liable makes all liable. Their liability is on the same instrument, accrues at the same instant, and flows from one and the same breach of one and the same contract. A text-writer says: "The words surety and guarantor are often used indiscriminately as synonymous terms; but while a surety and a guarantor have this in common, that they are both bound for another person, yet there are points of difference between them which should be carefully noted. A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal. Usually he will not be protected, either by the mere indulgence of the creditor to the principal or by want of notice of the default of the principal, no matter how much he may be injured thereby. On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join." Brandt Suretyship and Guar., section 1. *Markland M. & M. Co.* v. *Kimmel*, 87 Ind. 560.

In a carefully written article in the Albany Law Journal it is said: "It may be stated as a general rule that the bond of a cashier or other officer is an undertaking, not only for honesty but for capacity, for reasonable skill and diligence in the discharge of his duties." 17 Alb. L. J. 340. In this article very many cases are collected, and they speak of the bond as a contract of suretyship, as does Judge Thompson in his work on the "Liability of Officers and Agents of Cor-

porations." See pp. 494–544 inclusive. They are so treated by other writers. Morse Banking, 211, 247; Law of Building Ass'ns, sections 217, 219.

It is true of every contract of suretyship, that the liability of the sureties is accessary to that of the principal. Pothier says: "As the obligation of sureties is, according to our definition, an obligation accessary to that of a principal debtor, it follows that it is of the essence of his obligation, that there should be a valid obligation of a principal debtor." 1 Pothier Obl. 366; De Colyar Guar. & Sur. 37; Burge Suretyship, 3.

In every case of suretyship there is a contract of the principal which the surety undertakes that he shall perform. Of the many familiar instances, it is only necessary to name a few: A receiver's bond, an appeal bond, a bond to secure the performance of a building contract, to secure the faithful performance of duties by the agent of a corporation, to refrain from engaging in a designated business within the limits of a certain specified territory. High Receivers, sections 127 to 133, and cases cited; *Gavisk* v. *McKeever*, 37 Ind. 484; *Davis* v. *Sturgis*, 1 Ind. 213; *Potts* v. *Hartman*, 101 Ind. 359; *City of Lafayette* v. *James*, 92 Ind. 240 (47 Am. R. 140). In all of these cases, and very many more like them, it has always been considered that the contract of the principal was the main one, and that of the other promisors the accessary; but, nevertheless, that the latter were sureties. If it can be said of the bond of a cashier that those who unite with him are guarantors, and not sureties, then the same thing must be said of bonds of agents, of trustees, of receivers, and, in fact, of all bonds in which all the obligors are not all principals. With all deference and respect, I submit that such a holding would destroy settled rules and narrow the limits and range of contracts of suretyship much within the limits long and uniformly assigned to them. It seems to me that it must be said of the cashier's bond before us, as was said of the bond before the court in *City of Lafayette* v. *James, supra*, that "The bond is simply an undertaking that he should perform the duties of his em-

ployment as already fixed at the time of, and prior to, the ex-- ecution of the bond."

So far as the statement of facts in *Singer Mnfg. Co.* v. *Littler,* 56 Iowa, 601, enables me to judge of its effect and scope, I think it not in point. The question there arose on the answer. The complaint averred that Littler became bound to pay money to the plantiff upon the sale of sewing machines, or upon the endorsement of paper taken upon such sales, and the sureties answered that they had no notice of his default. In that case, therefore, there were debts guaran-- teed, while here, there is an undertaking that duties shall be performed, just as there is in a receiver's bond, an agent's. bond, a trustee's bond, and many other bonds of like char- acter. The court in the Littler case recognized the effect and importance of this distinction, for it said: "They became first and only bound upon the bond, whereby they guaranteed that Littler would pay his indebtedness to plaintiff in what- ever form it assumed. A guarantor becomes bound for the performance of a prior or collateral contract upon which. the principal is alone indebted; a surety is bound with the principal upon the contract under which the principal's in-- debtedness arises. This is a familiar doctrine of the law." This statement of the law proves that the bond before us. makes the appellants sureties and not guarantors, for it is the breach of that bond that creates the indebtedness against all the obligors. The parties are all bound upon the same in-- strument, the one default makes them all liable, and until that default occurs not one of them is liable, but, when it does occur, all are liable. In the case cited the obligors, other than the principal, were not bound by the instrument. which created the indebtedness of the latter; while here the one instrument binds all of the obligors, and the one breach makes them all liable. In speaking of a bond in many re-- spects similar to the present, the Supreme Court of Vermont said: " But there is no distinction, in this respect, between the principal and the sureties. Alanson Seaver had engaged to

do certain things; and for not doing them he was liable. The sureties engaged that he should do them, and for his not doing them they became liable. So that the same act, or neglect, that charges the principal, must charge the sureties." *Seaver* v. *Young*, 16 Vt. 658.

In this instance the question whether the contract was one of guaranty or suretyship does not exert an important influence, but the question is intrinsically one of very great importance, and I have thought it proper to outline the reasons which constrain me to dissent from the proposition that a cashier's bond constitutes a contract of guaranty.

ZOLLARS, J., concurs in the foregoing opinion.

Filed June 25, 1885.