## Metzger *v.* Hubbard et al.

[No. 18,622. Filed October 5, 1899.]

Bills and Notes.—*Promissory Note.—Indorsement.—Suretyship.—Guaranty.* —An indorsement of a promissory note by the payee as follows: "For value received, I hereby sell and assign the within note to W., and guarantee the payment and collection of the same, and agree to pay all attorney's fees. and do waive present-ment for payment, protest and notice of protest and nonpayment of

153  189
153  643

153  189
154  362

153  189
163  314

153  189
166  503

Metzger *v.* Hubbard.

the same," constitutes a direct and absolute undertaking to pay the note, upon which undertaking the indorser is liable at the suit of an assignee; and it is not required of such assignee that he attempt collection from the maker before proceeding against such indorser. *pp. 190-194.*

APPEAL.—*Sustaining Demurrer to Pleading.*—*Harmless Error.*—It is harmless error to sustain a demurrer to one paragraph of a pleading, where a remaining paragraph contains all the material allegations thereof and no more. *p. 195.*

BILLS AND NOTES.—*Assignment.*—*Indorsement.*—*Merger.*—An undertaking indorsed on a note by the payee thereof is not merged into a separate written assignment of such note by the mere acceptance of such assignment. *pp. 196, 197.*

From the St. Joseph Circuit Court.   *Affirmed.*

*S. N. Chambers, S. O. Pickens, C. W. Moores* and *D. M. Shively,* for appellant.

*A. Anderson* and *A. L. Brick,* for appellees.

MONKS, J.—On March 29, 1884, John Snorf executed his promissory note to appellant in these words: "Niles, Michigan, March 29, 1884.   Five years from the 16th day of April, A. D. 1884, for value received, I promise to pay John B. Metzger twenty-eight hundred and thirty-five dollars, with interest at the rate of seven per cent. per annum, the interest on the whole sum to be paid annually on the 16th day of April of each year, a mortgage bearing even date herewith being collateral thereto.   Signed, John Snorf." On the same day Snorf and wife executed a mortgage to appellant on lands in the state of Michigan to secure said note. On March 31, 1884, appellant Metzger sold and transferred said note to one Daniel Ward, in consideration of $2,800 then paid by said Ward to him, and assigned said note to said Ward by the following agreement in writing indorsed thereon. "For value received I hereby sell and assign the within note to Daniel Ward of South Bend, Indiana, and guarantee the payment and collection of the same, and agree to pay all attorney's fees, and do waive presentment for payment, protest and notice of protest and non-payment of the same, all

without relief from valuation and appraisement laws. Signed, John B. Metzger." Said Ward died at St. Joseph county Indiana in 1892, testate, the will was duly probated, and an executor appointed who sold and assigned said note by indorsement to appellees. The interest was paid on said note each year by the maker thereof, in full, to October 19, 1891. This action was commenced by appellees against appellant upon his said contract indorsed upon said note. Appellant's demurrer to the complaint for want of facts was overruled and he filed an answer in five paragraphs, the first being a general denial. Demurrers for want of facts were sustained to the third, fourth, and fifth paragraphs of answer. The trial of said cause by the court resulted in a finding and, over a motion for a new trial, judgment in favor of appellees.

The complaint proceeds upon the theory that appellant's contract indorsed on said note was a direct agreement to pay said note upon which he was liable at the suit of his own or any subsequent assignee. If this theory is correct the court did not err in overruling appellant's demurrer to the complaint.

It is the settled rule in this State that, when the form of the contract is that of an original and absolute undertaking to pay the debt of another, the liability of the promisor is that of surety; but when the agreement is that another shall pay in the first instance and the promisor only becames liable upon the default of the other, the contract is one of strict guaranty. "Usually the contract of the guarantor is to answer for the default of his principal, if by the use of due diligence a loss results from such default, while the surety is responsible at once upon his direct engagement to pay." *Furst & Bradley Mfg. Co.* v. *Black*, 111 Ind. 308, 313; *Ward* v. *Wilson*, 100 Ind. 52, 55, 56, 50 Am. Rep. 763; *LaRose* v. *Bank*, 102 Ind. 332, 335, 336.

It has been uniformly held in this State that where any person upon a sufficient consideration, by a contract in writing, guarantees the payment of the debt of another, evi-

denced by a promissory note or otherwise, in language sub-
stantially as follows, "I guarantee the payment of [describ-
ing the debt]," such contract is a direct and absolute un-
dertaking to pay the debt without any condition or con-
tingency whatever, and renders him primarily liable thereon,
and that therefore such person is not entitled to any notice
of the failure of the other party to pay the debt, and no
laches of the holder of said indebtedness , or failure to collect
or attempt to collect the same from the other parties liable
for its payment will relieve the person making such contract
from the payment thereof, and that such a contract passes
to the assignee of such indebtedness.   *Nading* v. *McGregor*,
121 Ind. 465; *Wright* v. *Griffith*, 121 Ind. 478, 481; *Furst
& Bradley Mfg. Co.* v. *Black*, 111 Ind. 308; *Ward* v. *Wil-
son*, 100 Ind. 52, 50 Am. Rep. 763; *Kline* v. *Raymond*, 70
Ind. 271; *Frash* v. *Polk*, 67 Ind. 55; *Cole* v. *Merchants
Bank*, 60 Ind. 350; *Studabaker* v. *Cody*, 54 Ind. 586;
*Sample* v. *Martin*, 46 Ind. 226; *Dickinson* v. *Colter*, 45
Ind. 445; *Watson* v. *Beabout*, 18 Ind. 281; *Burnham* v.
*Gallentine*, 11 Ind. 295.

In *Burnham* v. *Gallentine*, *supra*, the agreement entered
on the back of the note by the payee was in the following
words:   "I guarantee the payment of this note, and costs,
if any are made on it," and it was held to be in substance and
legal effect a promissory note and the person executing it an
absolute promisor, unconditionally bound to pay the note
without regard to the solvency or insolvency of the maker
thereof.

In *Sample* v. *Martin*, *supra*, the agreement indorsed on
the note by persons, neither one being the payee, was, "We
guarantee payment," and it was held that the persons execut-
ing the same were unconditionally liable, and were not dis-
charged by the failure to use diligence to collect the note of
the maker while he was solvent and able to pay.

In *Studabaker* v. *Cody*, *supra*, the note was indorsed by
the payee as follows, "For value received I assign this note

Metzger *v.* Hubbard.

to Edgar Henderson, and guarantee the payment of the same when due," and it was held that the same was a direct agreement by the payee to pay the note when due, depending upon no demand of payment, or other condition, and upon which he was primarily and absolutely liable at the suit of the first or any subsequent assignee.

In *Cole* v. *Merchants Bank, supra,* two persons, not the payees of the note, indorsed on the back thereof the following, "We jointly or severally, for value received, hereby guarantee the prompt payment of the within note." Said note was afterwards sold and assigned by the payee to said Merchants Bank, and the assignee brought an action on said agreement and it was held that said contract passed to said bank and it was entitled to recover thereon upon the doctrine declared in *Sample* v. *Martin,' supra,* which was approved.

In *Frash* v. *Polk, supra,* William Frash assigned to one Polk a judgment, and at the same time he and one John Frash executed an agreement which, omitting that part which described the judgment, assigned it as follows: "We hereby guarantee that said judgment, bearing ten per cent. interest, shall be paid to said Robert Polk on or before December 25, 1875, and in case it is not paid by that time we guarantee the payment of three per cent. additional interest from said date (Dec. 25, 1875) until said judgment is, paid," and it was held that said contract was not a, collateral guaranty, but that it was a direct and absolute contract of the persons executing it, and that they were severally liable thereon.

In *Kline* v. *Raymond, supra,* the writing sued on read: "I hereby guarantee the payment of six hundred dollars to Raymond, Lowe & Co.,     *   *   *    for goods bought April 3, 1872, by G. H. Baxter, Muncie, Ind., the terms being for net goods sixty days, and time goods four months. This guaranty shall cover any balance in account, not exceeding the amount above named. Invoice not made out, and may

exceed the amount guaranteed by $200.00 or $300.00." And it was held to be an absolute and unconditional promise to pay a definite sum.

In *Fursl & Bradley Mfg. Co.* v. *Black, supra,* S. M. Black entered into a contract with one Prier, upon the back of which was written an agreement, guaranteeing the fulfilment of said agreement by said Black, and it further provided : "I further guarantee to the said H. J. Prier the payment of all notes that may be taken by him in part or full payment of all sums for which he may become liable under this contract, including in the above guarantee the payment of all notes made by any other person whatever that may be transferred to said H. J. Prier by S. M. Black. Payable without relief from valuation or appraisement laws." It was held in an action on said contract that the part thereof that guaranteed the fulfilment on the part of Black, of his contract with Prier, was an indirect or collateral guaranty, because the persons executing the same only guaranteed that Black would fulfil it, and they did not assume or agree to do so themselves. The court however held that the latter part of the agreement which guarantees the payment of all notes taken by Prier, under the agreement between him and Black, was a direct, and absolute undertaking to pay all such notes upon which they were absolutely and unconditionally liable.

It is evident that the agreement sued on is, under the rule established in this State, a direct and absolute undertaking to pay said note, and that appellant's liability thereon is absolute and unconditional, and that neither appellees nor their assignors owed appellant any duty to collect or attempt to collect the same from the maker of the note, and that their laches, if any, in this respect, did not discharge appellant from his liability to pay said note, and the indorsement of said note to appellees passed to them the agreement of appellant sued upon. *Cole* v. *Merchants Bank, supra; Studabaker* v. *Cody, supra.* The word "collection" in said

Metzger *v.* Hubbard.

agreement does not change the legal effect of the direct undertaking to pay the note.   It may be true that by said agreement appellant not only undertook to pay the note but also guaranteed the collection of the same, as in *Furst & Bradley Mfg. Co.* v. *Black, supra.*   As to whether this is a proper construction of the agreement it is not necessary to decide.   This seems, however, to have been the opinion of the trial court in refusing to allow appellees attorney's fees in this action which could only be sustained upon the theory that the attorney's fees provided for in said agreement were the attorney's fees incurred or paid by appellees in an action against Snorf and wife on the note and mortgage, and not attorney's fees incurred or paid in an action on appellant's agreement.   This ruling of the trial court is not challenged here, and we are not required to, and do not, decide as to its correctness.   The agreement in *Burnham* v. *Gallentine, supra,* which was held to be an absolute and unconditional promise to pay the note, contained a provision guaranteeing the payment of the costs, if any were made, in an action on the note.   The court did not err, therefore, in overruling the demurrer to the complaint.

The fourth and fifth paragraphs of answer were drawn upon the theory that appellant's agreement was a strict guaranty, and that he did not undertake thereby to pay the note. It follows from what we have already said, that the court correctly held said paragraphs of answer insufficient.

Appellant says that "the third paragraph of answer sets up the same facts as the second paragraph of answer, with the additional facts" setting forth the same.   The sufficiency of the additional facts stated depends upon the theory of appellant that the agreement sued upon is one of strict guaranty, and therefore added no strength to said third paragraph, being mere surplusage.   As said third paragraph without said additional facts was the same as the second, the error, if any, in sustaining the demurrer thereto was harmless, for the reason that appellant could make the same de-

fense under the third paragraph without any other or greater evidence than would have been required under the second. *Hormann* v. *Hartmetz*, 128 Ind. 353, 354, 355; *Lester* v. *Brier*, 88 Ind. 296; *City of Elkhart* v. *Wickwire*, 87 Ind. 77, 79.

It is next insisted that the court erred in overruling appellant's motion for a new trial. Appellant insists that the issue of fact made by the general denial to the second paragraph of answer should, under the evidence, have been found in his favor. Said second paragraph of answer, disregarding surplusage, conclusions and other unnecessary and immaterial allegations, avers in substance that, "on March 31, 1888, appellant and said Ward, who was then the holder of said note, entered into the following agreement: 'Know all men by these presents, that I, John B. Metzger, of St. Joseph county, State of Indiana, for value received, the receipt whereof is hereby acknowledged, have sold, assigned, transferred and set over, and by these presents do sell, assign, transfer and set over unto Daniel Ward, of St. Joseph county, State of Indiana, his executor, administrator or assigns, to his and their own proper use and benefit, a certain indenture or mortgage bearing date March 28, A. D. 1884, and recorded March 31, A. D. 1884, in Liber 24, Mortgages, pages 608 of the records of Berrien county and state of Michigan in the registry office thereof, which mortgage was executed and delivered by John Snorf and Teresa Snorf, his wife, to the undersigned, John B. Metzger, together with the promissory note and the debt and interest secured by said mortgage; and I do hereby give the said Daniel Ward, his executor, administrators and assigns the full power and authority, for his or their own use and benefit, or at his or their own cost, to ask, demand, collect, receive, compound and give acquittance for the same or any part thereof, and in my name or in his own name or otherwise prosecute and withdraw any suit, or proceeding in law or in equity therefor. The note secured by said mortgage is of even date herewith, and for the principal sum of $2,835, bearing interest at seven per

cent. from April 16, A. D. 1884. In witness whereof I have hereunto set my hand and seal this 31st day of March, A. D. 1888. (Signed) John B. Metzger.' That the note mentioned in said agreement is the note upon which the agreement sued on in this case was indorsed, and the said mortgage mentioned was given to secure said note, and that said Ward thereupon undertook, assumed and agreed to collect said note and mortgage, and released this appellant from any further duty with respect thereto, and accepted said assignment in lieu of, and in satisfaction of the agreement of appellant sued upon in the complaint."

There was no evidence given by any one that said Ward agreed to receive said assignment in lieu or discharge of appellant's undertaking to pay said note, or that he would release appellant therefrom, or that the same should be canceled in consideration of said assignment. Unless therefore the mere execution by appellant of said written assignment set forth in the second paragraph of answer, and its acceptance by Ward, released, discharged, or canceled appellant's undertaking to pay said note, appellees were entitled to recover thereon, and the motion for a new trial was correctly overruled.

The written assignment set up in said paragraph in no way refers to or modifies appellant's written undertaking to pay the note, nor was said undertaking, by the mere acceptance of said assignment, merged therein. There is nothing inconsistent in the two writings, and they may both stand without in any way interfering with each other. The written assignment did not require Ward to sue on the note and mortgage, it only gave him the right to do so, a right which he already had. It is evident that the mere execution and acceptance of the assignment in March, 1888, did not cancel, release, or in any way prevent the enforcement of appellant's undertaking to pay said note.

Finding no available error in the record the judgment is affirmed.