Toney and Another *v.* Johnson.

Remedy.—Damages by Mill Dam.—The remedy provided in the ninth subdivision of sec. 684, 2 G. & H., p. 312, for the assessment of damages in favor of any person injured in any manner by a mill dam already built, or to have the dam declared a nuisance, as the case may require, is merely cumulative, and does not deprive the party injured of his action at the common law.

APPEAL from the *Parke* Circuit Court.

Ray, J.—This action was prosecuted by the appellee against the appellants for the purpose of recovering damages for overflowing lands, and to abate a mill dam as a nuisance, affecting the rights of the appellee.

The complaint charges that the appellee has been the owner and seized of the lands described in the complaint, and ad-

jacent to the dam, since 1833; that in 1823, one *Francis Dickson* erected a mill-dam across *Raccoon* creek, abutting on the east upon the lands of appellee; that said dam had been maintained from 1823 to 1857 at seven feet; that in 1857 one *Gookins* removed the old dam and made a new one, against the protest of the appellee; that the new dam was twelve feet higher up the stream on the west side, and about one hundred feet on the east side, than the old dam, and that the same is of the hight of nine feet, and on higher ground than the old; that the appellants purchased the mill property in *October*, 1863, and that they have maintained said dam at nine feet, and diagonally across said stream, thereby overflowing appellee's land adjacent thereto, destroying crops, washing the soil and changing the current of the creek to the east side. Concluding with prayer for $2,000 damages, and that the dam be abated as a nuisance to the private rights of the appellee.

The appellants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, in that appellee had a statutory remedy, which was exclusive and not cumulative. The demurrer was overruled.

The defendants answered in five paragraphs:

1. General denial.

2. An ancient mill seat, conveyed by divers persons down to appellants, and that the dam was, and still is, from seven to eight feet in hight; that the original grantor, who owned the lands held by the plaintiff and defendants, sold part of the land, describing the same, to parties who transferred to the plaintiff, reserving the mill seat and privileges owned by appellants, and which had been acquiesced in by all the holders of the land, from the original owner down to the plaintiff.

3. That in 1857 the old dam was washed away, and *Gookins* made a new one on the same site, and that said dam was, and yet is, but seven feet in hight; that at the time *Gookins* erected the said dam, *Johnson*, the appellee, stood

by while *Gookins* was expending his money in repairing, and made no objection; that large sums of money were thus expended, with plaintiff's knowledge and consent, and that appellants now hold the said mill and privileges.

The fourth answer sets up, by way of an estoppel, that since appellants purchased said mill, improvements and additions to the dam have been made with the knowledge and consent, and by the direction of appellee, and that there has been thus expended $2,000.

The fifth answer sets up a license of *Johnson* to make improvements to the dam, thereby throwing the current of the stream from the east to the west side of the creek, and that improvements were thus made to the extent of $3,000, under the directions of the appellee.

A reply was filed. There was a trial by a jury and finding for the plaintiff. The jury also found in answer to the special interrogatories, that the hight of the former dam across the creek was seven feet; that the hight of the dam as maintained and used by the defendants is eight feet and ten inches; that the dam floods the land of the plaintiff on the east side to a greater extent than the former dam, and that the plaintiff sustains thereby material injury; that such injury would be removed by reducing the hight of the present dam to the same hight as the former one, and that the defendants are only entitled to maintain the present dam at the hight of seven feet above the lower edge of the lower mudsill, and that if the dam remains at its present level it will cause permanent injury to the plaintiff's land.

In response to questions submitted by the defendants the jury found that the defendants had used the mill for nearly two years; that the value of the mill was between $5,000 and $6,000, and that the defendants had expended in repairs about the sum of $1,000; that the plaintiff did not consent to the construction and repair of the dam; that the mill site has been occupied and a dam maintained for forty-two years; that when the water is on a level with the top

of the present dam, it is raised to a hight of eight feet ten inches from the lower edge of the lower mudsill, and the dam commences to raise the water at the upper mudsill. Upon these findings of the jury, the court ordered the dam to be cut down to a level of seven feet from the lower edge of the lower mudsill.

It is insisted that the demurrer to the complaint should have been sustained, on the ground that the remedy provided by statute excludes any other proceeding. Such has not been the view taken by this court. From the organization of this court, actions like the present have been sustained. The distinction between statutes which are exclusive and those which simply provide a cumulative remedy, is stated in the case of *Lang* v. *Scott*, 1 Blackf. 405. "If a statute is introductory of new rights, which did not before exist in the country, and prescribes a penalty for their violation, the persons claiming under the act must depend for the security of the rights thus claimed upon the provisions therein specified. When there is a pre-existing right at common law, and an affirmative statute intervenes, inflicting a new penalty, the law is otherwise."

The appellants, however, claim that they were authorized to flood the land of the plaintiff to any extent required to run the machinery of the mill, by virtue of a clause in an agreement between a prior owner of the entire land and the former owner of the mill site. The language is as follows: "It is understood that by the possession of *Raccoon* creek, nothing further is intended than to secure the entire water privileges, so far as it is requisite for the mill of said *Francis Dickson.*" This clause follows, "a conveyance of the entire possession of *Raccoon* creek, where it passes through his (the grantor's) lands or premises; and should the said *Dickson* wish hereafter to build a mill on any suitable situation below the one he is now erecting, to permit a race being cut through his lands to it, and to give him the land whereon to erect said mill, and a sufficient mill yard and passage, not to exceed two acres." It is very clear that the

grant of the possession of *Raccoon* creek did not give a right to overflow the adjoining land, and that the subsequent language was intended as a limitation and restriction of this possession, and not as an enlargement thereof. Under the grant, the appellant's grantors have erected a dam to the hight of seven feet, and the jury have permitted it to remain at that hight. Nothing more can be claimed under the language of the grant.

The judgment is affirmed, with costs, and five per cent. damages.

*D. E. Williamson* and *A. Daggy*, for appellants.

*J. E. McDonald, A. L. Roache* and *D. Sheeks*, for appellee.