Filed Sept. 22, 1893.

---

No. 16,067.

THE CHICAGO AND INDIANA COAL RAILWAY COMPANY *v.* HALL.

RAILROAD.—*Right of Way.*—*Appropriation of Land For.*—*Damages.*—*Remedy of Land-Owner.*—*Equity.*—*Privies.*—Where a railroad company appropriates land to its own use, as a right of way, with the consent of the owner, with the understanding that the damages accruing by reason of such appropriation should be paid as soon as the road was completed, the owner of such real estate may maintain the common law action for damages, on failure to pay the same, against either the company appropriating the land, or may maintain an

equitable action for damages against another holding title under through and by right of the former company, the remedy by writ of assessment being simply a cumulative remedy to those of the common law and equity.

From the Tippecanoe Circuit Court.

*S. H. Spooner* and *W. H. Lyford*, for appellant.

*J. R. Coffroth*, for appellee.

DAILEY, J.—This suit was instituted in the Benton Circuit Court, but, on change of venue, was tried in the Tippecanoe Circuit Court. The first paragraph of complaint is a common action for ejectment. This was dismissed before trial.

The second paragraph is substantially as follows: "And said plaintiff, above named, further complaining of defendant, above named, says that he is now, and for ten years last past has been, the owner in fee of the following real estate, in Benton county, Indiana, to wit: the southeast quarter of section 7, township 24, north, range 7, west, containing 160 acres, and, at the time of the happening of the grievances hereinafter complained of, he was, and for a long time prior thereto had been, using all of said land as one farm; that, on the —— of August, 1881, the Chicago and Great Southern Railway Company, a corporation organized under and by virtue of the laws of the State of Indiana, in that behalf enacted, desired to construct its road through a part of said land, to wit, the southwest quarter thereof, and applied to plaintiff to pay him for a right of way through the same; that plaintiff then informed said company that it would be impossible for him to state what damage the construction of the road through his premises would be to him or his land, until the same was constructed; that thereupon it was agreed between plaintiff and said company that the latter should construct its road across plaintiff's said land, and that as soon as said road was

completed, said company would pay him the damages occasioned; that, pursuant to said agreement, said company, in 1882, constructed its road over the southwest quarter of said real estate, occupying a strip fifty feet wide, beginning sixty-six and one-half rods north of the southwest corner of said forty-acre tract, thence in a southeasterly direction through said premises, leaving the same at a point seventy-eight and seven-eighths rods east of the southwest corner thereof, which is now occupied and covered by the road-bed of this defendant; that defendant afterwards operated its trains over the same, thereby greatly injuring and damaging plaintiff in this, that the strip of land is, and was, at the time it was taken, of the value of $300; that plaintiff's said farm, of 160 acres, is cut into two pieces, thereby decreasing the value thereof, and the fields are carved into odd and inconvenient shapes, requiring a large amount of additional fencing, greatly interfering with the use of said farm in raising and handling stock, and rendering the property liable to be burned, to plaintiff's damage in the sum of $2,500; that said Chicago and Great Southern Railway Company refused to pay said damages, though he demanded the same, and said license therefor given said company became and was revoked by plaintiff; that on November 1, 1890, and April 9, 1883, said company executed to John C. New, trustee, two certain deeds of trust, upon all the franchises, rights and privileges, and all the real and personal property of said company of every kind and character, the first one to secure the payment of 2,000 bonds, each for the sum of $1,000, which said mortgages were duly recorded in the record of mortgages in the recorder's office of said Benton county, the first one on November 23, 1881, in record 11, p. 455; that, afterwards, Henry H. Porter, holder of a majority of said bonds so issued, brought an action against said

maker and others, in the United States Circuit Court for the district of Indiana, to foreclose said mortgage, but this plaintiff was not a party thereto; that such proceedings were had in said court, that on February 16, 1886, a decree of foreclosure was entered, and, on March 27, 1886, said Chicago and Great Southern Railway Company, its property, franchises, etc., was sold by William P. Fishback, master commissioner, under order of said court, at public auction, and that said Porter purchased the same and received a deed therefor by order of said court, and said New, trustee, as aforesaid, also conveyed the property covered by said deeds to said Porter, on April 20, 1886; that afterwards, Porter, together with others, organized a company for the purpose of operating the said railway, said company being organized under and by virtue of the laws of the State of Indiana, in that behalf enacted, under the name of the Indiana Railway Company, and said Porter conveyed and transferred to the last named company the property, rights and privileges so purchased by him; that the Chicago and Indiana Railway Company was a railway company duly organized under the laws of Indiana, in that behalf enacted; that afterwards said Indiana Railway Company and said Chicago and Indiana Coal Railway Company were consolidated, said consolidated company taking the name of the last named company, and said company is now occupying the last above described real estate of plaintiff, under and by virtue of said proceedings, and none other; that after said Chicago and Great Southern Railway Company had constructed its track across plaintiff's aforesaid land, it used, occupied, and enjoyed said premises, and operated its trains over the same for more than two years, and that defendant company is now, and for more than one year last past has been, using, occupying, and enjoying the same, and operating its trains over it

The Chicago and Indiana Coal Railway Company *v.* Hall.

without right, and during all of said time has unlawfully kept the plaintiff out of possession thereof; that said Chicago and Great Southern Railway Company is, and was at the rime of the foreclosure and sale, and ever since has been, insolvent; that prior to the commencement of this suit he demanded of defendant the payment of said damages to his land, but it failed and refused to pay the same, and he then demanded possession of said real estate, and revoked the license under which it was using, occupying, and enjoying said land. Wherefore plaintiff demands judgment for $5,000, for the recovery of said land, and all other proper relief.''

To the second paragraph of complaint appellant answered: Firstly,. the statute of limitations of six years; and, secondly, a special plea.

A demurrer to each of these answers was filed, which was overruled as to the first and sustained as to the second. The record recites that the appellant did file answers and interrogatories; that appellee did file demurrers to these answers, but neither of them is in the record; and the record also recites the ruling of the court thereon, but subsequently the ruling upon the demurrer to these answers was vacated, and appellant thereupon filed its two paragraphs of answer, the only ones in the record. To these paragraphs a demurrer was filed, which was overruled as to the first and sustained as to the second, but to this ruling there was no exception saved by appellant. The record reads as follows: ''And the court being sufficiently advised, now sustains the said demurrer to the fourth paragraph of answer to the second paragraph of complaint, to which ruling of the court the plaintiff then and there excepted; the court now overrules the demurrer to the second paragraph of answer to the first paragraph of complaint, and also now overrules the demurrer to the third paragraph of answer to the second paragraph

of complaint, to which rulings of the court, and each of them, upon each of said demurrers, the plaintiff then and there excepted, and the plaintiff now files his reply to the second paragraph of answer to the first paragraph of complaint.''

The errors assigned are as follows:

First. The complaint does not state facts sufficient to constitute a cause of action.

Second. The court erred in overruling defendant's demurrer to the second paragraph of complaint.

Third. In sustaining the demurrer to the fourth paragraph of answer to the second paragraph of complaint.

Fourth. In overruling defendant's motion to set aside the default taken against appellant, and to vacate the judgment.

Fifth. In overruling defendant's motion for a new trial.

This cause was tried by the court, and judgment rendered on the second paragraph of complaint, the first paragraph having been eliminated from the cause before trial.

Counsel for appellant discuss the sufficiency of the complaint, under its first assignment of error and upon the overruling of the demurrer to the second paragraph of the complaint, on the theory that the complaint seeks to recover for a tortious appropriation of plaintiff's lands by the defendant company, and as the facts disclosed by it clearly put defendant's predecessor in lawful possession of appellee's land, under an express license, appellee postponing damages until after the road was constructed, appellant was not a wrong-doer, and for the occupancy up to this time could not have been sued in an action founded upon tort, and that having entered upon a parol license, upon the faith of which appellant expended large sums of money in constructing and equipping the road,

the licensor will be held estopped from revoking the license, until the licensee can be placed *in statu quo*, and hence that at no time could appellant have become a trespasser.

Counsel quote from *Indiana, etc.,R. W. Co.* v. *Allen*, 113 Ind. 581, in which the court says: "What we affirm is, that acquiescence after public rights have intervened will prevent a land-owner from destroying the line of road by wrestling possession of a part of it from the company. * * * A citizen, who has stood by until after the completion of a line of road has involved public interests, shall not be allowed to sever the line and destroy its efficiency by wresting possession of part of it from the company."

It is *stare decisis* that a license, coupled with an interest, is irrevocable. *Campbell* v. *Indianapolis, etc., R. R. Co.*, 110 Ind. 490; *Evansville, etc., R. R. Co.* v. *Nye*, 113 Ind. 223; *Chicago, etc., R. W. Co.* v. *Jones*, 103 Ind. 386; *Louisville, etc., R. W. Co.* v. *Soltweddle*, 116 Ind. 257; *Buchanan* v. *Logansport, etc., R. W. Co.*, 71 Ind. 265; *Lake Erie, etc., R. W. Co.* v. *Michener*, 117 Ind. 465; 2 Rorer on Railroads, sections 741, 750 and 751.

"The doing of what the law gave her the right to do can not be imputed to her as a tort." *Dill* v. *Brown*, 54 Ind. 204 (208).

The authorities above cited and relied upon by appellant would be entirely pertinent to the first paragraph of complaint, in ejectment, had it remained in the record, or to an action for trespass, but we think counsel are mistaken in their claim that appellant is charged as a trespasser, and by inadvertence misconstrue the pleading. The correct theory of the complaint is the one adopted by the trial court, viz: It is a statement of fact to show the creation of an equity to damages for the taking and

use of land; to show that the old company entered, constructed, and operated its road over the land in dispute by consent of plaintiff, without payment of damages occasioned thereby, which were to be ascertained and paid when the road was built. The pleading negatives every fact inconsistent with the integrity of this equity, and shows circumstantially the relation of all the parties to this strip of land, and that plaintiff is without compensation. It does not seek to recover for a breach of agreement made by the old company and the plaintiff, but for a breach of equitable duty laid on the defendant by force of the facts, that it has taken his land and is using and holding it in the same right as its predecessor held it, and that plaintiff is entitled to, and is without, compensation.

The new company is enjoying the easement, under the conditions of the old company, and the benefits and burdens incident to its use are inseparable, in the absence of any relevant act or omission of the defendant. The equitable principle applicable here, as in many other cases, is that he who derives an advantage ought to sustain the burden.

Mr. Brown says: "A man will be bound by that which would have bound those under whom he claims *quoad*, the subject-matter of the claim, and no man can, except in certain cases which are regulated by the statute law and the law merchant, transfer to another a better right than he himself possesses. The grantee shall be in no better condition than he who made the grant."

This doctrine was fully recognized in the *Lake Erie, etc., R. W. Co.* v. *Griffin*, 107 Ind. 464, in this statement: "On the former appeal of this cause, we held that if this averment were true, it showed the appellant's election to adopt the original appropriation of appellee's premises

by its entry upon, use and occupation of such premises for the purposes of its railroad."

"We there said: In such case, the appellant's liability does not rest upon the judgment against the old corporation, but upon the principle that, of having adopted and ratified the original appropriation, it is bound in equity and good conscience to make compensation. For the right of the appellees to compensation for their property is protected by the Constitution, and it will not do to say that their unsatisfied judgment against the old insolvent corporation affords them any just compensation. The maxim applies, *qui sentit commodum, sentire debet et onus*."

In *Louisville, etc., R. W. Co.* v. *Boney*, 117 Ind. 501, the court says: "Where a consolidation of railroad companies takes place, in pursuance of the statute, the corporation into which the original companies are so merged becomes liable for all the valid debts and obligations of the consolidated companies and a judgment *in personam* may be rendered against it therefor."

The same doctrine is declared in *Cleveland, etc., R. W. Co.* v. *Prewitt*, 134 Ind. 557, 33 N. E. Rep. 367, and cases there cited. This is now settled law. The averments of the second paragraph of complaint concerning what is styled a revocation of appellant's license and the demand for possession are mere surplusage, in view of the chief line of averments to which we have referred. But the learned counsel for appellant urge with much vigor another reason why this demurrer should have been sustained, viz: Assuming that appellee has a cause of action, he should have proceeded by the writ of *ad quod damnum*, as provided by statute, and that having misconceived his action he must fail here; that it is a common law remedy, and the statute provides an ample remedy, of which appellee could avail himself to the exclusion of the common law remedy, counsel insist that he is probably re-

stricted to the one specified in the statutes, and that it is exclusive.

The statutory remedy is provided for in section 3953, R. S. 1881, and is in this language: "If, from any cause, there shall be any failure of the title to any right of way, or when the title thereto has not been acquired, upon which any railroad of this State is now constructed, it shall be lawful for the company owning the road, or for the party owning such lands upon which any part of the road is constructed, to apply to the proper court for the writ of assessment of damages, and have the damages which the owner of said property has sustained or may sustain by reason of the taking, use, and occupancy thereof by the company for the construction and maintenance of said road; and upon assessment and payment by the company of the damages which may be assessed or awarded, the title to such property shall vest absolutely in the company for the purposes of the said railroad," etc.

In this case, the appellant insists upon the broad proposition that when any work of a public character is authorized by an act of the Legislature, and a mode of obtaining compensation for private property to be taken for its construction is specifically pointed out, such compensation must be sought in the way prescribed by the act, and not otherwise. On the other hand, appellee contends that the method thus pointed out by the statute is cumulative, and does not defeat or take away the common law remedy. It will be observed that the language of the statute is, "It shall be lawful for the company owning the road, or for the party owning such lands upon which any part of the road is constructed, to apply to the proper court for the writ of assessment of damages," etc. It does not specify that it shall be so done, but it designates no plan other than the writ for such

assessment. In no analogous cases under this statute has the point ever been decided adversely to appellee, but the court has, on several occasions, expressed *dicta* in relation to the matter, in ejectment suits and actions for trespass.

In *Louisville, etc., R. W. Co.* v. *Beck*, 119 Ind. 124, which was a possessory action, the court said: "That a land-owner who stands by without demanding compensation, until a railroad company has so far completed and put in operation its road over his land as to involve the public interest, can neither enjoin the company nor maintain ejectment to recover his land. The only remedy left to the land-owner, in such a case, is to proceed within the proper time to have his damages assessed and enforced against the railroad company. This rule is founded upon the general principles of public policy, as well as upon the provisions of section 3953, R. S. 1881."

In *Pittsburgh, etc., R. W. Co.* v. *Swinney, Executrix*, 97 Ind. 586 (599), the court says: "The accepted doctrine now is that where a railroad company, or other corporation possessing similar powers, takes possession, and enters into the use of real estate, without the consent of the owner, and without taking the necessary measures to acquire the title it assumes to assert, the owner may resort to any or all of the usual remedies known to the law for the protection of his estate in the property."

The doctrine thus expressed, appellant claims, leaves, by implication, the converse of the rule, namely, that where the owner does consent, and the company takes possession under his license, he can not avail himself of all these remedies, but must be limited in his remedies to one or more of them.

In *Cincinnati, etc., R. R. Co.* v. *Clifford*, 113 Ind. 460 (467), also a possessory suit, the court said: "The counsel for appellant are, therefore, in error in assuming that

the only remedy to the land-owner is that given by statute. He is not confined to that remedy, but, in the proper case, may prosecute an action for damages, or for possession.''

In *Harshbarger* v. *Midland R. W. Co.*, 131 Ind. 117, 30 N. E. Rep. 1083, which was an action to recover for lands appropriated by defendant company and acquiesced in by the owner, the court said: ''It is a right of action existing in the owner at the time of the appropriation, and the creation of a right of action separate and distinct from the land. * * * The right of action accrued at the time when the ancestor might have maintained an action for the damages or instituted proceedings to have had his damages assessed.''

In *Lane* v. *Miller*, 22 Ind. 104, the court said: ''The objection made to the complaint is that as the law on the subject of the assessment of damages has given a person whose lands are injured by the erection of a mill-dam a remedy by writ of assessment of damages, he is confined to that remedy and can not resort to his action at common law.''

In *Snowden* v. *Wilas*, 19 Ind. 10, a query is raised whether he should not be confined to the statutory remedy, but the point has never been decided by this court.

In *Summy* v. *Mulford*, 5 Blackf. 202, the point, after full examination, was ruled the other way.

In *Toney* v. *Johnson*, 26 Ind. 382, a milldam case, the court said: ''It is insisted that the demurrer to the complaint should have been sustained, on the ground that the remedy provided by statute excludes any other proceeding. Such has not been the view taken by this court. From the organization of this court, actions like the present have been sustained. The distinction between statutes which are exclusive and those which simply provide a cumulative remedy, is stated in *Lang* v.

*Scott*, 1 Blackf. 405: 'If a statute is introductory of new rights, which did not before exist in the country, and prescribes a penalty for their violation, the persons claiming under the act must depend for the security of the right thus claimed upon the provisions therein specified. When there is a pre-existing right at common law, and an affirmative statute intervenes inflicting a new penalty, the law is otherwise.' "

In *Indiana, etc., R. W. Co.* v. *Allen,* 113 Ind. 581 (583), the court used this language. "Our conclusion is that acquiescence does defeat the action of ejectment, unless there are countervailing facts or some element which nullifies the force of the acquiescence. We do not assert that it will defeat any action, * * where only compensation is sought. * * * Compensation he may recover, possession he can not. To the recovery of just compensation his rights are confined."

These various opinions expressed by judges on points that did not necessarily arise in most of those cases, and were not directly involved in them, seem somewhat conflicting, but, taking the language employed in section 3953, *supra,* "it shall be lawful for the company owning the road, or for the party owning such lands * * * to apply to the proper court for the writ of assessment," etc., excludes the idea that the common law right of action for damages is abrogated, and supports the theory that the statute furnishes him this remedy in addition to the one with which he was vested under the common law. But, for the purposes of this case, we do not regard it necessary to decide this question. If appellant had preferred the writ of assessment, it also had a right to invoke the aid of the statute from its very terms, and thereby avoid the direct suit for damages, of which it complains. The license, according to its theory, not having estopped appellee from asserting a claim under

The Chicago and Indiana Coal Railway Company *v.* Hall.

the writ, appellant would not be deprived of the benefits of the statutory remedy. To be denied, by statute, a remedy possessed before its enactment, its terms should be express, or so clearly repugnant to the exercise of it as to imply a negative.

Parties are not compelled to avail themselves of statutory privileges, where they agree among themselves to adjust their own controversies in a different manner. The law fosters and encourages compromises and settlements of questions in dispute, in lieu of litigation, where conscionable terms can be agreed upon. The machinery of statutory law is at times cumbersome and unwieldy, and the administration of justice under it quite expensive. If, to avoid costs of litigation, they waive its provisions, and agree upon a cheaper and more direct plan, looking to equitable relief, courts should uphold and enforce its provisions. In this case, as stated, appellant's predecessor applied to appellee, before the road was constructed, to pay him for this right of way; appellee then informed the company that he could not tell the extent of his damage until the road was constructed; thereupon it was agreed that the company might construct its road across appellee's land, and, when completed, it would pay the damage occasioned. It occurs to us that, by force of this license and agreement, the parties dispensed with the writ of *ad quod damnum*, and agreed that the damages should be ascertained by mutual stipulation. If the original company had remained in possession, it could have been compelled to pay.

Appellant got no better title under the foreclosure proceedings than its predecessor had. Why should it not be compelled to do justice to the wronged land-owner? The original company had acquired the right to build its road upon the land in question, without being guilty of trespass or remitted to the writ of *ad quod damnum;* and

the measure of damages, as suggested, was afterwards to be ascertained by agreement. When appellant took possession of appellee's land, it affirmed the agreement, and, in equity, made itself liable to pay the damages.

"Acquiescence on the part of the land-owner, though acting as a waiver of his right to maintain ejectment, is by no means a waiver of his right to damages such as would have been recovered in a regular condemnation proceedings." 19 Am. and Eng. Encyc. of Law, 860.

Appellant is possessed of a license which, being irrevocable, renders it as secure in its possession as an easement, and an "easement once acquired becomes a privilege in favor of the dominant estate, and a burden imposed upon the servient estate, and subsequent grantees take them subject to the privilege or burden." Ballard's Real Estate Statutes, section 366.

The appellant does not discuss the sufficiency of the evidence to sustain the finding, and the question is therefore waived.

Judgment affirmed.

