# THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* SIMPSON.

[No. 21,849. Filed February 25, 1914. Rehearing denied March 3, 1915.]

1. TRESPASS.—*Theory of Complaint.*—*Damages.*—A paragraph of complaint on the theory that defendant by certain wrongful acts had destroyed a valuable mine with its appliances and accessories, rendered a manufacturing plant useless, had appropriated a strip of land belonging to plaintiff, and had removed a switch track from his lands, by reason of all of which plaintiff was damaged in a specified sum, was not objectionable as seeking a recovery for the loss of profits to the manufacturing plant alone. p. 701.

2. PLEADING.—*Determination of Theory.*—The theory of a pleading is to be determined from the general scope of its allegations, and not from isolated and detached parts of the averments. p. 701.

3. EMINENT DOMAIN.—*Taking Property.*—*Remedy of Landowner.* —*Damages.*—Where land is appropriated by a railroad company without the consent of the owner and without an assessment of damages, such owner, though acquiescing in the taking, may sue to recover damages for such appropriation. pp. 702, 706.

4. APPEAL.—*Waiver of Error.*—Assignments of error in the overruling of demurrers to paragraphs of complaint are waived by appellant's failure to point out error. p. 702.

5. APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrer.*— The sustaining of a demurrer to a paragraph of answer averring the taking of plaintiff's land under a license, was harmless, where all the evidence admissible thereunder was also admissible under other paragraphs to which demurrers were not sustained. p. 703.

6. RAILROADS.—*Right of Way.*—*Extent.*—Under a deed for a right of way through grantor's land for the space of fifty feet on each side of the center line of the road, the railroad company has no authority to appropriate any land or take material beyond the limit of fifty feet from the center of such right of way. p. 703.

7. TRESPASS.—*Injury to Land.*—*Independent Contractors.*—It is no defense to an action against a railroad company for damages on account of the destruction of entries and tunnels in plaintiff's coal mine caused by the making of excavations on plaintiff's land in lowering the grade of defendant's track, that the work was done by an independent contractor over whom defendant had no control as to the manner of doing the work, since he who

counsels, advises, abets or assists another to commit a tort, or joins in its commission, as well as he who actually commits the wrong, is a trespasser, and each is responsible for all the injury done.  p. 704.

8.  EASEMENTS.—*Severance of Surface and Minerals.—Easement of Way.*—The owner of the fee to land over which an easement for a railroad right of way has been granted, remains the owner of the minerals therein, and may make all lawful use of the land not inconsistent with the free use of the right of way. p. 706.

9.  RAILROADS.—*Right of Way.*—Where a railroad company as the owner of the easement had the right to occupy the surface of the land for a right of way, and the owner of the fee had the right to mine for coal thereunder, it was the duty of each to use his property so as not to unlawfully interfere with the other's right, and the destruction by the company of tunnels constructed beneath the right of way for the purpose of mining coal rendered the company liable in damages.  pp. 706, 707.

10.  APPEAL. — *Review.* — *Instructions.* — *Weight of Expert Testimony.*—In an action against a railroad company for damages to plaintiff's mine and brick plant, and for the wrongful appropriation of land, an instruction to the effect that the opinions of experts, who had testified concerning values and conditions, were not conclusive upon the jury, but were to be considered in connection with all the other evidence in the case in determining to what extent, if any, plaintiff's property was diminished in value by the alleged wrongs, that the jury was the sole judge of the weight to be given such opinions, etc., was not objectionable as directing the jury that the testimony of the experts was to be considered with all other evidence in the case, whether it related to the question of damages or not, since it must be presumed that the jurors were men of ordinary intelligence and understood the court to mean that such testimony should be considered with all the other evidence on the question of damages.  p. 707.

11.  APPEAL.—*Review.—Instructions.—Weight and Sufficiency of Evidence.*—An instruction that the jury was the judge of the weight of the evidence and the credibility of the witnesses, and that it could take into consideration the opportunities for knowledge of the facts about which witnesses had testified, the extent, if at all, to which they had been corroborated or contradicted by other evidence in the case, together with such other facts as would aid it in weighing the testimony, was not objectionable, since it must have been understood as not relating to other facts outside and foreign to the case.  p. 708.

12. EMINENT DOMAIN.—*Measure of Damages.—Value of Land.*— The measure of damages in an action against a railroad company for land appropriated was the value of the land taken. p. 708.

13. APPEAL.—*Review.—Invited Error.*—Appellant can not be heard to complain of an instruction given upon a theory not warranted by the pleadings, where it appears that it tendered an instruction upon the same theory. p. 709.

14. RAILROADS.—*Injury to Lands.—Liability.*—A railroad company, though having the right to lower the grade of its track to any depth it chooses, must protect the rights of the owner of the fee in entries and air passages constructed by him under the right of way in the mining of coal thereunder, especially where they were constructed pursuant to an agreement with the company, and, in an action to recover for such injury, instructions that defendant company would not be liable for such injuries from the lowering of its grade were properly refused. p. 711.

15. APPEAL.—*Review.—Misconduct of Counsel.*—Alleged misconduct of counsel in argument to the jury is not available on appeal, where the record discloses that upon objection at the time the remarks were withdrawn and the jury was instructed to disregard them. p. 711.

16. APPEAL.—*Review.—Intervening Error.*—Where it appears that errors, if any, were slight and did not affect the real merits of the case, they will be disregarded and the judgment will be affirmed. p. 712.

From Hendricks Circuit Court; *James L. Clark*, Judge.

Action by Benjamin Simpson against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Carter & Morrison, Enloe & Pattison* and *Frank L. Littleton*, for appellant.

*S. M. McGregor, Brill & Harvey* and *Robert W. McBride*, for appellee.

ERWIN, J.—This action was brought by appellee against appellant by a complaint in nine paragraphs, alleging damages to certain real estate in Clay County, Indiana, by reason of certain unlawful acts on the part of appellant, and demanding judgment for $150,000. To each of these paragraphs of complaint appellant unsuccessfully demurred. Appellant then answered in sixteen paragraphs. A separate

demurrer was filed by appellee to each paragraph of answer, except the first, which was a general denial. The demurrer was overruled as to the second, seventh, tenth, fourteenth and sixteenth paragraphs, and sustained as to each of the others. There was a reply in two paragraphs. The first, a general denial, the second an affirmative reply, to which a demurrer was sustained. The cause was submitted to a jury for trial. After hearing the evidence the plaintiff dismissed the fifth, sixth and eighth paragraphs of complaint. The cause went to the jury on the first, second, third, fourth, seventh and ninth paragraphs of complaint, and the first, second, seventh, tenth, fourteenth and sixteenth paragraphs of answer. Verdict for appellee for $25,000 and from judgment on the same appellant appeals to this court.

The errors relied upon for reversal are: (1) The court erred in overruling the demurrer to the ninth paragraph. (2) The court erred in sustaining the plaintiff's demurrer to the third paragraph of answer. (3) The court erred in sustaining the demurrer to the fourth paragraph of answer. (4) The court erred in sustaining the plaintiff's demurrer to the eighth paragraph of answer. (5) The court erred in overruling the demurrer to the third paragraph of complaint. (6) The court erred in overruling the motion for new trial.

The ninth paragraph of complaint is very lengthy, covering more than six pages of the transcript, and we will give only a concise statement of the allegations therein set out. It is alleged that appellee is and had been for more than ten years the owner of certain described land in Clay County, Indiana; that appellant, has been for more than twenty years and now is operating a line of railroad running east and west across said land; its right of way being a strip 100 feet wide, dividing appellee's land into two equal parts; that appellee became the owner in the year 1884, at which time appellant's railroad was in operation across said land on a grade, which at its deepest point was twelve feet below

the surface; that underlying the entire land, are two separate veins of coal of great value; that underlying each of said veins of coal are extensive deposits of fire clay, gannister, flint, shale and other mineral, which are of great value, to wit, $100,000; that the top vein lies at a depth of about thirty feet beneath the surface, and the second about sixty-five feet below the surface; that the grade upon which appellant was operating its said railroad was, prior to 1905, twenty-two feet above the top of the upper vein of coal, and that between the bottom of said grade and the top of the vein of coal was solid rock more than twenty feet thick; that for the purpose of developing and utilizing the coal and other minerals, appellee constructed on his land, north of the appellant's right of way, a shaft which extended down through said several veins of coal and other mineral, erected over the same a shaft house, with all necessary machinery, hoisting apparatus, pumps and other appliances necessary for operating the same, and constructed for said shaft into and along the line of said mines of coal and fire clay and other minerals, entries and air passages, which said entries and air passages appellant well knew extended under and across the line of said right of way twenty-two feet below the grade thereof; that said entries and air passages were necessary for the development and utilization of the products of said mine; that the same with the machinery necessary to operate the same was worth $25,000; that appellee had placed in said mine, lines of railroad equipped with ''T'' steel rails, with cars necessary and proper to operate said mine, of the value of $6,000; that appellee had erected on his land adjacent to said mine shaft, a mill with necessary machinery, appliances and kilns for the manufacture of fire brick to be manufactured from the clay found in said mine, and burned by the coal from said mine; that said mill with its machinery and appurtenances and appliances was worth $25,000; that the said mine with its equipment, and the mill each and all derived their principal value from the

fact of their proximity to each other, and from the existence of the entries and air passages, which rendered all of said several deposits in said several mines accessible and available for use in said mill, and that the value of each was largely dependent upon the continued maintenance of each other, and was also largely dependent upon the continued maintenance of a switch and side track, which had theretofore been constructed in connection with appellant's railroad whereby cars from said line of railroad could be run to appellee's said shaft and mill, which furnished the means of conveying the products of said mine and mill to market; that said switch and side track had been constructed in part by appellee and in part by appellant on an agreement that appellee was to grade the ground for the placing thereof and pay appellant $800, which grading appellee did and also paid the $800 to appellant, a part of the consideration being the agreement then made by appellant that it would thereafter perpetually maintain said switch and side track; that as a part of the consideration for the payment of the $800, the appellant agreed that appellee might thereafter maintain his said entries and air passages under and across the line of appellant's right of way; that on the —— day of —————, 1905, appellant by its officers and employes took possession of and appropriated to its own use a strip of appellee's land along the south side of its right of way $79\frac{1}{2}$ feet wide, and thereupon changed its grade across appellee's land, without in any manner acquiring the right to appropriate said land, or change said grade, and wrongfully and unlawfully cut said grade to a depth of about thirty feet, at the deepest point across said lands, thereby bringing the bottom of said grade to a point within about four feet of the roof of appellee's entries to the top vein of coal, and in violation of their agreement and without any necessity therefor, caused the rock forming the roof of said entries and air passages to be blasted and broken through, there-

by destroying said entries and air passages; that a short distance east of said entries and air passages was a certain ravine on appellee's land, extending across appellant's right of way, through which ravine flowed large quantities of water, in part derived from springs, located in said ravine, and from surface water; that for more than twenty years the water flowing through said ravine had been conducted under and across said right of way through a conduit, which was of sufficient size to allow the passage of all said water; that appellant wrongfully and unlawfully took up and destroyed the said conduit and thus obstructed the passage of said water across said right of way, and thereby caused great quantities of water to accumulate on the south side of its right of way and caused the same to flow into appellee's entries and air passages in appellee's mine, which had been broken down by appellant; that with said water appellant caused great quantities of mud, rocks, railroad ties and other debris, to flow into said mines, thereby filling the said mine shaft and chambers of both of said mines and covering up and burying appellee's railroad and cars in said mine, and thereby rendering all of said mine inaccessible and impossible of future reclamation, and entirely destroying the value of said mine, with all its valuable contents of said shaft, hoisting apparatus, pumps and other appliances and appurtenances, and thus also destroying the value of appellee's plant for the manufacture of fire brick; that appellant severed the connection of the side track from its said road, and removed the same from appellee's land, and has failed and refused to restore the same; that the said brick plant had, at the time of the destruction of said mines and the removal of the side track an earning capacity of $12,000 per year; that by reason of the destruction of said mines and the removal of the side track appellee has been unable to operate or in any manner make use of said brickmaking plant, and has lost all use of the same for more than two

years, to his damage $25,000; that upon the several causes of action hereinbefore set forth, he demands judgment for $150,000.

The sixth paragraph of complaint is the same as the ninth, except that it charges the injurious acts to have been done on the 100-foot right of way instead of the 79½-foot strip, as charged in the ninth paragraph. This was dismissed before the case went to the jury. The seventh paragraph is similar to the ninth, except that it seeks to recover damages to the real estate as a mining and manufacturing property, and closes with a prayer for $100,000. The fourth paragraph seeks to recover for the destruction of a pond on the natural watercourse, which formerly flowed across the right of way of appellant, and which watercourse was changed so as to flow along appellant's right of way into appellee's entries and air passages, thus depriving appellee of the use of the water, in operating his mining and manufacturing plant to his damage $2,000. The third paragraph of complaint seeks a recovery for the appropriation of 79½ feet in width by 1,315 feet in length of appellee's land lying south of the right of way; that on said strip of land was a deposit of red clay, especially valuable for the making of tile, and was used for that purpose and had a market value of $1 per ton; that on said strip of land so appropriated by defendant was more than 40,000 tons of said red clay of the value of $40,000, all of which was destroyed and lost to appellee by appellant's said unlawful acts, to his damage $40,000 for which he demands judgment. The second paragraph of amended complaint seeks to recover damages to the real estate as a manufacturing and mining property and is the same as the ninth paragraph down to the last two items of the ninth, except that it alleged the wrongful acts to have been done on the 100-foot right of way, instead of the 79½-foot strip and closes with a prayer for $150,000. The first paragraph of complaint is in all respects similar to the ninth, except that it charges that the principal part

of the coal, fire clay and other minerals was on the south side of the right of way, and also that by reason of the acts of the appellant the same was rendered worthless, and demands judgment in the sum of $150,000.

The appellant in its assignment of errors questions the sufficiency of the third and ninth paragraphs of complaint.

It is apparent that the action is on the theory that 1. the appellant had by certain wrongful acts destroyed a valuable mine with its appliances and accessories and rendered a manufacturing plant useless, and appropriated a strip of land belonging to appellee by all of which wrongful acts it is alleged appellee sustained damages in the sum of $150,000. This is the same theory in each of the first, second, seventh and ninth paragraphs, and presents from a slightly different viewpoint the facts covering the entire controversy. The third and fourth each refer to only one phase of the controversy. The third seeks a recovery for the land alleged to have been taken, the fourth for the dam alleged to have been rendered useless. The fifth, sixth and eight paragraphs were dismissed at the conclusion of the hearing of evidence. The theory of 2. a pleading is to be determined from the general scope of its allegations and not from the isolated and detached parts of the averments. *Western Union Tel. Co.* v. *Reed* (1884), 96 Ind. 195, 198; *Platter* v. *City of Seymour* (1882), 86 Ind. 323, 326; *Johnson* v. *Greist* (1882), 85 Ind. 503; *City of Fort Wayne* v. *Hamilton* (1892), 132 Ind. 487, 491. 32 N. E. 324, 32 Am. St. 263; *Monnett* v. *Turpie* (1892), 133 Ind. 424, 427, 32 N. E. 328. It is contended by appellant that the ninth paragraph of complaint seeks the recovery for the loss of profits to appellee's brickmaking plant alone. In this we think it is in error for it is apparent from the allegations of the entire paragraph that appellee is seeking to recover damages for the unlawful appropriation of $79\frac{1}{2}$ feet of land; for the destruction of his mine and equipment; loss of his fire clay;

for the wrongful removal of his switch and for the wrongful deprivation of the use of his brickmaking plant, and it is sufficient to withstand a demurrer. If this paragraph of complaint was upon the theory that it was for the recovery of profits lost to appellee by reason of not being able to operate the brickmaking plant, then it is doubtful whether it would be sufficient. *Western Gravel Road Co.* v. *Cox* (1872), 39 Ind. 260; *Montgomery County, etc., Soc.* v. *Hardwood* (1891), 126 Ind. 440, 26 N. E. 182, 10 L. R. A. 532.

The third paragraph, the overruling of the demurrer to which, appellant assigns as error, sought to recover damages for the unlawful appropriation of 79½ feet of appellee's land. If a railroad company without the consent of the owner of the land and without an assessment of damages appropriates land for the use of the company, such owner, while he may acquiesce in the taking, may sue to recover damages for such appropriation. *Pittsburgh, etc., R. Co.* v. *Beck* (1899), 152 Ind. 421, 53 N. E. 439; *Chicago, etc., R. Co.* v. *Patterson* (1901), 26 Ind. App. 295, 59 N. E. 688; *Chicago, etc., R. Co.* v. *Hall* (1893), 135 Ind. 91, 34 N. E. 704, 23 L. R. A. 231; *Indiana, etc., R. Co.* v. *Aller* (1888), 113 Ind. 308, 15 N. E. 451, 3 Am. St. 650; *Pittsburgh, etc., R. Co.* v. *Harper* (1895), 11 Ind. App. 481, 37 N. E. 41; *Indiana, etc., R. Co.* v. *Allen* (1888), 113 Ind. 581, 15 N. E. 446; *Porter* v. *Midland R. Co.* (1890), 125 Ind. 476, 25 N. E. 556; *Roushlange* v. *Chicago, etc., R. Co.* (1888), 115 Ind. 106, 17 N. E. 198; *Strickler* v. *Midland R. Co.* (1890), 125 Ind. 412, 25 N. E. 455; *Bloomfield R. Co.* v. *Van Slike* (1886), 107 Ind. 481, 8 N. E. 269. Under the authorities above cited the third paragraph was sufficient.

The appellant, by failing to point out any error as to the other paragraphs of the complaint, has waived them. What we have said as to the ninth and third paragraphs disposes of all the errors in relation to the ruling on the demurrers to the complaint.

The appellant filed sixteen paragraphs of answer to the

complaint. The court sustained demurrers to the third, fourth and eighth paragraphs, and the ruling thereon is assigned as error here. The third paragraph of answer addressed to the third paragraph of complaint admits the taking of the surface of the 79½ feet of real estate in question, but says it did so under a license from the owner of the land. The second paragraph, which was left in, also pleads a license, while the tenth, fourteenth and sixteenth paragraphs are also pleas of license. Every item of evidence that would have been admissible under the third paragraph of answer was admissible under those left in. Sustaining a demurrer to a good paragraph of answer is harmless where there are other paragraphs in the record under which the same evidence is admissible. *Pattison* v. *Babcock* (1892), 130 Ind. 474, 30 N. E. 217; 1 Works' Practice §537; *Claypool* v. *Jaqua* (1893), 135 Ind. 499, 505, 35 N. E. 285; *Duncan* v. *Lankford* (1896), 145 Ind. 145, 44 N. E. 12; *Metzger* v. *Hubbard* (1899), 153 Ind. 189, 195, 54 N. E. 761; *Field* v. *Noblett* (1900), 154 Ind. 357, 361, 56 N. E. 841.

The fourth paragraph of answer sought to justify the taking of the 79½ feet of appellee's land. By the terms of a deed, from one Rodenbarger, who was the owner of the land at the time the road was built and which deed grants a right of way over the land in question, and is in the following language, "For the width or space of fifty feet on each side of the center line of said road as now and as may be hereafter located, and for length, the distance between the limit of said tract to include also the right of said company to take material, except timber for the construction and repair of said road, at any point within fifty feet of said line, together with the right of way over said tract of land sufficient to enable said company to construct and repair its road, and the right to conduct water by aqueduct and the right of making proper drains." This paragraph of answer was tendered as an answer to the third

paragraph of complaint, which charges the taking of the appellee's land, 79½ feet, on the south side of the original 100-foot right of way. This deed would not authorize appellant to take any material beyond the limit of fifty feet of the center of said right of way, or appropriate any of appellee's land. Where the grant of right of way is limited to a certain extent, the railway can not assert a claim to a greater width without acquiring new rights. *Cleveland, etc., R. Co.* v. *Smith* (1912), 177 Ind. 524, 546, 97 N. E. 164; *Lake Erie, etc., R. Co.* v. *Michener* (1889), 117 Ind. 465, 20 N. E. 254; *Roushlange* v. *Chicago, etc., R. Co., supra.*

It is further contended that the court erred in sustaining the demurrer to the eighth paragraph of answer. This paragraph of answer purports to be a partial answer to the first, second and sixth paragraphs of complaint, and as to so much of said paragraph as charged that appellant wrongfully and unlawfully broke into the appellee's entries and tunnels, the defense being based on the ground that the work was done by an independent contractor, to whom appellant had contracted for doing the work, and averring that appellant had no control over the manner in which the work should be done. Appellee charges appellant with the wrongful entry upon 79½ feet of his land, and appropriating the same to the use of appellant and that it cut down and removed the soil and rock from that part of the land, all of which was done without legal authority so to do. It is not disputed by appellant that it authorized the contractor to whom it let the work for lowering the grade to go upon the 79½ feet of appellee's land, but it claims it had a right under the deed from Rodenbarger so to do. It is well settled law that he who counsels, advises, abets or assists another to commit a tort, or joins in its commission is responsible for all the injury done, whether specifically authorized or not, and can not excuse himself from liability because the particular injury complained of was occasioned by the agent or contractor in connection with

the wrongful acts authorized. Both are traspassers and each is individually liable for the tort committed. 31 Cyc. 1582 and cases cited under note 19; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 535, 87 N. E. 723; 1 Cooley, Torts (3d ed.) 223, *et seq.* and cases cited under note 44; *Johnson* v. *Scott* (1910), 205 Mass. 294, 91 N. E. 302; 38 Cyc. 485, 487 and cases cited under note 8; *Hole* v. *Sittingbourne, etc., R. Co.* (1861), 6 H. & N. (Eng. Ex.) 488. The defense of independent contractor is not available where a recovery is sought for damages resulting from acts done in violation of a duty imposed by law, upon the party charged with responsibility for the injury, and he can not escape liability by engaging for its performance by another, nor escape the consequences of a violation of his own express contract, by the defense, that he let the work to another, over which he had no control. 1 Sherman & Redfield, Negligence (6th ed.) §§174-176; *Parks* v. *Board, etc.* (1891), 3 Ind. App. 536, 538, 30 N. E. 147, and cases cited; 1 Thompson, Negligence §§651, 665. The court did not err in sustaining a demurrer to this paragraph of answer.

The only question remaining for our consideration is the ruling of the trial court on the motion for a new trial, wherein the giving of certain instructions, tendered by appellee, and the refusal to give certain instructions tendered by appellant; and the giving by the court of its own motion certain instructions; also misconduct of appellee's attorney in his argument to the jury. Of the instructions given by the court as tendered by the appellee, appellant complains of Nos. 3, 7½, 8, 11, 15 and 25; of those given by the court of its own motion appellant complains of Nos. 11, 12 and 13. Appellant also contends that the court erred in refusing to give instructions Nos. 13, 31 and 41 tendered by appellant.

It is the settled law that where an easement for a right of way is granted a railway company across lands of another,

the owner of the fee remains the owner of all mineral in the land, and may make all lawful use of the land, so long as he does not interfere with the free use of the right of way. *Smith* v. *Holloway* (1890), 124 Ind. 329, 330, 24 N. E. 886; *Board, etc.* v. *Indianapolis Nat. Gas Co.* (1893), 134 Ind. 209, 33 N. E. 972. In giving instruction No. 3, tendered by appellee the court told the jury in substance, that if appellee had constructed a mine with entries and air passages, under the right of way of the appellant, and that the appellant, in lowering its grade, could not unnecessarily and wantonly destroy said entries, air passages and mine, and if it was found that the same could have been done, without interfering with said mine it was the duty of appellant to do so; also that, if it was necessary for the subjacent support of said right of way to protect said mine it was appellant's duty to do such acts as would protect it. The railroad company as the owner of the easement had the right to occupy the surface of the land, and appellee as the owner of the fee, had the right to mine for coal thereunder, and it was the duty of each to use his property so as not to interfere unlawfully with the other's right, and if tunnels were constructed beneath the appellant's right of way by appellee for the purpose of mining for coal, and appellant destroyed the same it was liable to respond in damages to appellee. *Livingston* v. *Moingona Coal Co.* (1878), 49 Iowa 369, 31 Am. Rep. 150; 2 Lindley, Mines (2d ed.) §§826, 827; Wood, Nuisances §§204-208; Mac Swinney, Mines (2d ed.) §280; *Bagnall* v. *London, etc., R. Co.* (1861), 7 H. & N. (Eng. Ex.) 421. The court did not err in giving instruction No. 3.

Instruction No. 7½ told the jury in substance that if the appellant appropriated a strip of appellee's land, without taking necessary steps to acquire the same, as provided by the statutes of the State, that such taking would be unlawful, and that appellee would be entitled to recover therefor, even if appellee knew of the taking

at the time and made no objections. This instruction stated the law as decided by this court in *City of Fort Wayne* v. *Hamilton, supra.* See, also, *Pittsburgh, etc., R. Co.* v. *Beck* (1899), 152 Ind. 421, 53 N. E. 439. Instruction No. 11 on the measure of damages for the taking of the strip of ground is, in effect, the same as No. 7½, except that it told the jury that if appellant had acquired a right of way, 100 feet wide across appellee's land, by virtue of a deed, that this deed would not authorize appellant to go outside of said right of way and appropriate other land, not included in the grant. Under the authority of *City of Fort Wayne* v. *Hamilton, supra,* and *Pittsburgh, etc., R. Co.* v. *Beck, supra,* this instruction was rightly given. See *Cleveland, etc., R. Co.* v. *Smith* (1912), 177 Ind. 526, 548, 97 N. E. 164.

Instruction No. 15 told the jury that if appellant, while engaged in lowering its grade knew of the existence of appellee's air passages and entries, constructed for the operation of the mine, it was appellant's duty to cause the work to be done so as to avoid any injury to said entries and air passages, if said work could have been so done as to avoid doing any injury thereto. What we have already said in relation to the giving of instruction No. 3 is applicable here, and the giving of this instruction was not erroneous. The same rule is applicable to instruction No. 25, which told the jury that if appellant broke into the air passages and entries, that appellee had a right to assume that appellant would do whatever was necessary to protect him from damages by reason thereof.

Instruction No. 12 given by the court of its own motion, and complained of here, is to the effect that experts had testified concerning values and conditions; that these opinions were not conclusive upon the jury, but were to be considered by it in connection with all the other evidence in the case, and were intended to aid the jury, in connection with all the other evidence, in determining to

what extent, if any, appellee's property was diminished in value by the alleged wrongs, provided it should find appellee is entitled to recover; that the jury is the sole judge of the weight that should be given to these opinions; and to determine this it might take into account with other things the extent of the experience of each of these several witnesses, their apparent special knowledge of the subject-matter of litigation together with their general intelligence and appearance. The appellant contends that this instruction is wrong and misleading for the reason that it directs the jury that the evidence of the experts is to be considered, with all the other evidence in the case, whether it relate to the damages to his real estate or not. This instruction told the jury that the expert testimony was offered to enable it to determine the damages, if any, and the supposition is that the jury was composed of men of ordinary intelligence, and understood that the court meant that this testimony should be considered by the jury in connection with all other evidence, on the question of damages.

Instruction No. 13 given by the court on its own motion, told the jury that it was the judge of the weight of the evidence and the credibility of the witnesses, and among other things told it that it had a right to take into consideration the opportunities for knowledge of the facts about which witnesses had testified, the extent, if at all, to which they had been corroborated or contradicted by other evidence in the case together with such other facts as would aid it in weighing the testimony. This was evidently intended by the court, and understood by the jury to relate to such other facts, as were shown by the evidence, and could not relate to other facts, outside and foreign to the case.

Instruction No. 11 given by the court on its own motion related to the measure of damages. In this instruction the court told the jury that as to the land appropriated the measure of damages was the value of the

land taken. Under the authority of the *City of Fort Wayne* v. *Hamilton, supra,* this part of the instruction was correct. Another part of the instruction of which appellant complains is as follows: "As to the paragraph of the amended complaint which seeks to recover damages for breaking into and flooding plaintiff's mines and diverting water from his pond and injuring his business of mining and manufacturing, if he is entitled to recover, so far as the measure of damages is concerned he may recover on one of two different theories. One theory is that of permanent injury and the other is that of temporary injury and suspension of business. If the plaintiff is entitled to recover for said injuries, and they are permanent, then the measure of damages is the difference in value of his said land, minerals, machinery and manufacturing plant, all as real estate, immediately before the injury and immediately after the injury. If such injuries are temporary only and said mining and manufacturing plant might have been restored, after said injuries, to its original condition, then the measure of damages is the cost of restoring said business and the damages to said business or loss of profits during what would be a reasonable time to restore the same. If you should find that said property has been damaged permanently as alleged, and you further find that such damages may be or might have been materially reduced by restoring said plant, you may, if you find that plaintiff is entitled to recover for such damages, determine the depreciation in value of plaintiff's real estate by such permanent injuries as can not be restored and the amount necessary to restore plaintiff's plant so far as the same may be or might have been restored, and make your verdict for the damages thus determined as shown by the evidence. If the plaintiff's property is permanently injured and can not be restored as a milling and manufacturing concern then the only measure of damages is the depreciation in value of said property by said injuries. If his property is only temporari-

ly injured as a mining concern, then the only measure of damages is the cost of restoring such business and loss of profits during a reasonable time to restore the same.'' This part of the instruction, appellant says is erroneous for the reason that no averment in any paragraph of complaint warrants the giving of an instruction in relation to profits, lost by reason of suspension of business.

If this instruction is erroneous, a matter we do not decide, the appellant is in no position to complain, for it tendered an instruction on this same subject, as follows: ''24. If under the instruction I have given you, you find for the plaintiff and assess damages for injuries to his business, then I instruct you that if by the exercise of reasonable diligence and ordinary care under the circumstances and by the use of appropriate means, the water could have been taken out of his mine and the same used substantially as it was before it was flooded, that it was his duty to have taken the water out of it as soon after it was flooded as it was practicable to have done so and that you cannot assess any damages for him for any injury to his business after such time as it was practicable for him to have taken the water out of his mine, nor can you assess any damages in his favor for taking water out of his mine and for preparing it for use, nor can you in any event assess damages for loss of business for a longer time than he alleges his business has been detroyed.''

''If one party asks instructions asserting a designated theory he can not complain that the court gave similar instructions at the request of his adversary  *  *  *  . The general doctrine that a party can secure no advantage from an invited ruling is tacitly asserted in the cases which hold that a party who tenders an immaterial issue can not successfully complain because the court tried the case upon the issue he tendered.'' Elliott, App. Proc. §627. See, also, *Orient Ins. Co.* v. *Kaptur* (1911), 176 Ind. 308, 312, 95 N. E. 230; *Cleveland, etc., R. Co.* v. *Dixon* (1912), 51 Ind. App.

658, 96 N. E. 815; *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99.

Instructions Nos. 13 and 14 tendered by the appellant are to the effect that appellant had a right to lower the pipe in the stream crossing its right of way and was not liable to appellee for so doing. The complaint alleges and the evidence is to the effect that in changing the grade, and removing the pipe across the right of way, appellee was deprived of the use of the stream of water, which was a natural watercourse, and besides this the allegations are, and the evidence establishes the fact, that appellant changed the course of the stream, and turned the same into the mine of appellee, and thus destroyed appellee's mine. Instruction No. 31 was to the effect that appellant had a right to cut into appellee's mine and destroy it if it saw fit to do so in the lowering of its grade. The appellant no doubt would have the right to lower its grade to any depth it saw fit, but in doing so it must protect the right of the appellee in his entries and air passages, and especially so where they had originally been constructed pursuant to an agreement with appellant, that they should be maintained in the manner they were constructed. *Livingston* v. *Moingona Coal Co., supra;* 2 Lindley, Mines (2d ed.) §§826, 827. It was not error to refuse each of the three instructions tendered by the appellant.

The appellant complains of certain alleged misconduct of appellee's attorney in his argument to the jury. Upon objections by appellant at the time, the court withdrew the remarks from the jury and instructed the jury to disregard the same. This cured the error if there was any. *Johnson* v. *Brown* (1892), 130 Ind. 534, 28 N. E. 698; *Blume* v. *State* (1900), 154 Ind. 343, 356, 56 N. E. 771; *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617, 621, 72 N. E. 589; *Pigg* v. *State* (1896), 145 Ind. 560, 43 N. E. 309. This is a case where any slight error which does not go to the

real merits of the case should be disregarded. The record in this case show that nine paragraphs of complaint were filed with sixteen paragraph of answer, with demurrers to each. That six weeks were occupied in the trial of the cause, and nearly 3,000 pages of testimony taken. The appellee tendered thirty-three instructions and the appellant fifty-two. The court gave fourteen of its own, and it would be almost miraculous if some slight error was not committed, during the progress of the trial. §700 Burns 1914, §658 R. S. 1881; *Indianapolis St. R. Co.* v. *Schomberg* (1905), 164 Ind. 111, 72 N. E. 1041; *Ohio Oil Co.* v. *Detamore* (1905), 165 Ind. 243, 73 N. E. 906.

There being no reversible error shown in the record the judgment is affirmed.

## DISSENTING OPINION.

MORRIS, J.—I am of the opinion that the petition for rehearing should be granted. I think appellant is correct in its contention that the ninth paragraph of complaint proceeds on the theory of liability for loss of profits. This appears to be the theory adopted by the trial court in its instructions to the jury, and it should prevail here. On such theory the paragraph was insufficient to repel a demurrer for want of facts.

I think there was error also in sustaining the demurrer to the third paragraph of appellant's answer which was addressed to the third paragraph of complaint. This error was not rendered harmless unless evidence of all the material facts therein pleaded was admissible under other paragraphs of answer, and I am satisfied it was not.

NOTE.—Reported in 104 N. E. 301; 108 N. E. 9. On the liability of a railroad company in constructing its roadway, for removal of lateral support to adjoining property, see 21 L. R. A. (N. S.) 318. See, also, under (1) 38 Cyc. 1078; (2) 31 Cyc. 84; (3) 15 Cyc. 804; (4) 3 Cyc. 388; (5) 31 Cyc. 358; (6) 33 Cyc. 165; (7) 38 Cyc. 1041; (8) 14 Cyc. 1208; (9) 33 Cyc. 189; (10) 38 Cyc. 1599; (11) 38 Cyc. 1724; .(12) 15 Cyc. 704; (13) 38 Cyc. 1788; (14) 33 Cyc. 188; (15) 38 Cyc. 1502; (16) 3 Cyc. 386.